# Exhibit B

Entered on Docket
November 14, 2014
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: November 14, 2014**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-31376DM |
| HOWREY LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ ) | |
| ALLAN B. DIAMOND, Chapter 11 | ) Adversary Proceeding |
| Trustee for Howrey LLP, | ) No. 13-3093DM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JONES DAY LLP, | ) |
| | ) |
| Defendant. | ) |
| _____ ) | |

MEMORANDUM REGARDING CERTIFICATION
FOR DIRECT APPEAL TO COURT OF APPEALS

I.   INTRODUCTION

   This Memorandum Regarding Certification For Direct Appeal To

Court Of Appeals is issued concurrently with the Court's

Certification For Direct Appeal To Court of Appeals and is the

document required by Fed. R. Bankr. P. 8001(f)(4)(A).[1]

_____

   [1]The Certification and this Memorandum, with changes only in
the caption of each, are being filed in eight separate adversary
proceedings that have not been consolidated; the motions that lead
to the orders that are the subject of the Certification were

-1-

1    The order that is the subject of this Certification was
2 entered on September 29, 2014 and defendant filed a timely Notice
3 Of Appeal and a Motion For Leave To Appeal on October 14, 2014
4 (Dkt. Nos. 52 and 55).
5    Plaintiff, Allan B. Diamond, Chapter 11 Trustee ("Trustee"),
6 filed an opposition to the Motion For Leave To Appeal (Dkt. No.
7 58) on October 29, 2014 and thereafter the clerk transmitted the
8 matter to the United States District Court for the Northern
9 District of California.  As of the date of this Memorandum, the
10 district court has not granted or denied the Motion For Leave To
11 Appeal.  Accordingly, this court is the court to make and file the
12 certification for direct appeal.  Fed. R. Bankr. P. 8001(f)(2).
13    Fed. R. Bankr. P. 8001(f)(4)(A) requires that the court
14 making a certification on its own shall provide in an accompanying
15 memorandum the information required by Fed. R. Bankr. P.
16 8001(f)(3)(C)(i)-(iv).  That subdivision provides that a request
17 for certification shall include the following:
18    (i) the facts necessary to understand the question presented;
19    (ii) the question itself;
20    (iii) the relief sought;
21    (iv) the reasons why the appeal should be allowed and is
22 authorized by statute or rule, including why a circumstance
23 specified in 28 U.S.C. § 158(d)(2)(A)(I)-(iii) exists; and
24    (v) a copy of the judgment, order or decree complained of and
25 any related opinion or memorandum.
26    Attached are copies of the court's Order Granting In Part,
27 _____
28 argued together.

-2-

1   Denying In Part Motion To Dismiss Adversary Proceeding and the

2   court's Memorandum Decision On Motions To Dismiss filed on

3   September 9, 2014, which is also reported at *In re Howrey LLP,* 515

4   B.R. 624 (Bankr. N.D. Cal. 2014).   The facts necessary to

5   understand the question presented, the question itself, the relief

6   sought, and the reasons why the appeal should be allowed follow.

7   II.   BACKGROUND

8        Howrey LLP ("Howrey") was a well known, large law firm

9   headquartered in the District of Columbia when an involuntary

10  petition under chapter 7 was filed against it in this court in

11  2011.   By a series of events that followed that are not material

12  to the issues at hand, venue was left in the Northern District of

13  California, Howrey converted its case to chapter 11, and Trustee

14  was appointed.

15       Howrey was the third major law firm bankruptcy case in this

16  court in the past several years.   The first was Brobeck, Phleger &

17  Harrison LLP (Case No. 03-32715) that began in 2003 when an

18  involuntary chapter 7 petition was filed against the firm.

19  There the trustee sued several law firm defendants under a

20  fraudulent transfer theory based upon the seminal California case

21  of *Jewel v. Boxer,* 156 Cal. App. 3d 171 (1984*)* and the fraudulent

22  transfer provisions of the Bankruptcy Code and applicable state

23  law.   In short, he contended that as part of the firm's

24  dissolution, the firm and the partners executed a Jewel Waiver,

25  whereby the firm waived the right to profits under the Unfinished

26

27

28

-3-

Business rule[2] that might be earned in the future by the departing partners. Because the Jewel Waiver was a fraud on creditors, the law firms who took on those partners and completed the Unfinished Business could be held liable. The court's decision in 2009 spells out in detail many of the issues that were presented. See *Greenspan v. Orrick Herrington & Sutcliffe (In re Brobeck, Phelger & Harrison LLP),* 408 B.R. 318 (Bankr. N.D. Cal. 2009)*.* All Brobeck adversary proceedings were resolved without a ruling by any appellate court.

The second case was a voluntary chapter 11 case filed by Heller Ehrman LLP (Case No. 08-32514) that began in 2008. In that case the chapter 11 plan administrator filed actions similar to those that had been filed in the Brobeck case against several law firm defendants. Four defendants did not settle and the court's published and unpublished rulings, which were consistent with the Brobeck decision, were rejected by the district court after the reference was withdrawn. See *Heller Ehrman LLP v. Davis, Wright, Tremaine, LLP*, --- B.R. ---, 2014 WL 2609743 (N.D. Cal. June 11, 2014). That decision is on appeal to the United States Court of Appeals for the Ninth Circuit (Case Nos. 14-16314, 14-16315, 14-16317, 14-16318).

---

[2]This court has applied the following definition of the Unfinished Business rule in all three law firm bankruptcies: The unfinished business rule provides that, in the absence of an agreement to the contrary, partners have a duty to account to the dissolved firm and their former partners for profits they earn on the dissolved firm's "unfinished business," after deducting for overhead and reasonable compensation.

*Greenspan v. Orrick Herrington & Sutcliffe (In re Brobeck, Phelger & Harrison LLP),* 408 B.R. 318, 326 (Bankr. N.D. Cal. 2009)(footnote omitted).

-4-

1    In the present case, the Trustee has filed adversary

2  proceedings which largely mirror the Brobeck and Heller litigation

3  strategies (applying District of Columbia law), but add new

4  theories in an attempt to recover profits earned on Unfinished

5  Business taken from Howrey by partners who left prior to its

6  dissolution and the execution of a Jewel Waiver.  In its September

7  9 decision, the court agreed with the Trustee's theory of unjust

8  enrichment under District of Columbia law and said that he could

9  proceed under that theory against law firms that completed

10 Howrey's Unfinished Business (the "Pre-Dissolution Claims").  The

11 court also determined that, notwithstanding the district court's

12 Heller ruling applying California law and other developments

13 construing New York law, the Trustee could maintain his Jewel

14 Waiver claims under District of Columbia and applicable fraudulent

15 transfer law against law firms which completed Howrey Unfinished

16 Business (the "Post-Dissolution Claims").

17 III. QUESTIONS PRESENTED

18    In the actions against defendants Jones Day LLP (A.P. No. 13-

19 03093), Pillsbury Winthrop Shaw Pittman LLP (A.P. No. 13-03095)

20 and Perkins Coie LLP (A.P. No. 14-03032), Trustee seeks to recover

21 on Pre-Dissolution Claims and Post-Dissolution Claims.  In the

22 actions against defendants Neal, Gerber & Eisenberg LLP (A.P. No.

23 13-03057), Kasowitz Benson Torres & Friedman LLP (A.P. No. 13-

24 03060), Sheppard Mullin Richter & Hampton LLP (A.P. No. 13-03062),

25 Hogan Lovells US LLP (A.P. No. 13-03094) and Seyfarth Shaw LLP

26 (A.P. No. 13-03254), he seeks to recover only on Pre-Dissolution

27 Claims.

28    Thus, as to the Post-Dissolution Claims, his claims are

-5-

virtually the same as those prosecuted to settlement in the
Brobeck case and which are the subject of the pending appeals to
the Ninth Circuit in the remaining Heller matters.  The only
material difference is the underlying legal principle that a law
firm's Unfinished Business is a property right under California
law (a principle rejected by the district court in the Heller
decision) and that it is also a property right under District of
Columbia law, as this court has ruled (and no court has addressed
on appeal).

As to Pre-Dissolution Claims, Trustee sought against all
eight defendants Unfinished Business profits under the Bankruptcy
Code, a turnover of those profits, also under the Bankruptcy Code,
an equitable accounting and a recovery based upon a theory of
unjust enrichment.  The court rejected the first three theories,
but sustained the Trustee's contention that he could recover Pre-
Dissolution Claims under an unjust enrichment theory.

In summary, therefore, the questions presented are (1) may
Trustee rely District of Columbia law to recover profits on
Unfinished Business taken from Howrey and brought to defendants by
partners who left Howrey prior to its dissolution and (2) may
Trustee recover as property transferred in fraud of creditors, the
profits on Unfinished Business brought to the defendants by
partners who left Howrey as of or after dissolution and the
execution of the Jewel Waiver.

IV.  RELIEF SOUGHT

In the eight adversary proceedings the Trustee seeks money
damages.  As to the Post-Dissolution Claims, Trustee hopes to
recover the value of the profits on Unfinished Business

-6-

1 transferred in fraud of creditors under 11 U.S.C. § 550(a). As to

2 the Pre-Dissolution Claims, he seeks to recover the profits on the

3 Unfinished Business under the unjust enrichment theory.[3]

4     The amounts he seeks are not quantifiable at the present time

5 but the court estimates them to be potentially millions of

6 dollars. This observation is made from the court's own experience

7 with the settlements (some confidential) against law firms in the

8 Brobeck case and settlements and prayers for relief and other

9 information under seal in the Heller case.

10 V. REASONS WHY APPEAL SHOULD BE ALLOWED

11     The United States Court of Appeals for the Ninth Circuit

12 should grant leave to appeal. The statutory authority for doing

13 so is found in 28 U.S.C. § 158(a)(3) and (d)(2)(A) as the order on

14 appeal is an interlocutory order. The circumstances set forth in

15 28 U.S.C. § 158(d)(2)(A)(i) and (iii) are present.

16     First, this court is not aware of any controlling decision of

17 the United States Court of Appeals for the Ninth Circuit or the

18 Supreme Court of the United States that construes any state law to

19 identify profits earned on Unfinished Business of a law firm as a

20 property interest that can be or cannot be the subject of recovery

21 of its value under the state or Bankruptcy Code fraudulent

22 transfer laws or under principles of unjust enrichment.

23     At the same time, the matter is of significant public

24 importance to the legal community. Whether or not law firms who

25 take on members of failed law firms, and complete Unfinished

26

27     [3]The Trustee has not yet sought appellate review of the
court's dismissal of his other claims for recovery on Pre-
28 Dissolution Claims.

-7-

Business formerly handled by the failed firm, are at risk under the Trustee's theories is an unsettled and serious question affecting those law firms and the attorneys who seek to join them. For example, *see generally,* Ashley Sorrell, *Covering Your Assets: The Unfinished Business Rule and Bankrupt Law Firms,* 30 Ga. St. U. L. Rev. 825 (Spring 2014); Peter Rogers, *Who Gets the Jewels When a Law Firm Dissolves? The Unfinished Business Doctrine and Hourly Matters*, 108 NW. U. L. Rev. 311 (Fall 2013); Rachel M. Earthnut, *Ripping the Jackson Pollock Off of the Wall: Reconciling Jewel v. Boxer with the Modern Law Firm,* 26 Go. J. Legal Ethics 557 (Fall 2013); Michael Debacle & Victoria Guilfoyle, *Law Firm Dissolutions: When the Music Stops, Does Anyone Need to Account for Any Unfinished Business?*, 14 Del. L. Rev. 41 (2013); Douglas Richmond, *Migratory Law Partners and the Glue of Unfinished Business*, 39 N. Ky. L. Rev. 359 (2012).

Next, 28 U.S.C. § 158(d)(2)(A)(ii) ("the judgment, order or decree involves a question of law requiring resolution of conflicting decisions") is not directly on point.  Yet the United States Court of Appeals for the Ninth Circuit will be resolving the matter as applicable to California law in due course in the Heller appeals.  The United States Court of Appeals for the Second Circuit, after certification to the New York Court of Appeals, appears to have resolved the similar question under New York law following the bankruptcies of two other prominent law firms.  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 480 B.R. 145, 159 (S.D.N.Y. 2012), *perm. app. granted*, 2012 WL10234967 (2d Cir. Dec. 18, 2012), *appeal to* 2013 WL 9363394 (2d Cir. Dec. 2, 2013), *certifying questions to* 24 N.Y.3d 16 (2014), *rev'd in part*

1  *and vacated in part on other grounds* 574 F.App'x 15 (2d Cir.

2  2014); *see also Geron v. Robinson & Cole LLP*, 476 B.R. 732, 739

3  (S.D.N.Y.2012), *appeal to* 736 F.3d 213 (2d Cir. 2013), *certifying*

4  *questions to* 24 N.Y.3d 16 (2014), *aff'd*, 762 F.3d 157 (2d Cir.

5  2014).

6      A prompt resolution by direct appeal of this matter will

7  settle the issue under District of Columbia law.  While the

8  disposition under the laws of only two states and the District of

9  Columbia is not specifically a situation involving conflicting

10  decisions, resolution of the issues is important for management

11  and planning by major law firms, particularly given the ever

12  present possibility of the failure of other law firms in the

13  future.

14      Finally, as to 28 U.S.C. § 158(d)(2)(A)(iii), an immediate

15  disposition of this question will clearly "advance the progress of

16  the case or proceeding in which the appeal is taken."  If the

17  direct appeal is taken and decided favorably for the appellants,

18  the litigation will come to an end without the parties having to

19  engage in what no doubt will be very expensive and time consuming

20  discovery and other pre-trial activity and the subsequent trials,

21  judgments and appeals.  If the matters are resolved favorably to

22  the Trustee, that quite likely will facilitate prompt consensual

23  resolution of these disputes.

24      While no doubt the Trustee and the law firm defendants will

25  develop more fully their reasons if they decide to file a petition

26  for permission to appeal as provided in Fed. R. Bankr. P.

27  8001(e)(5), the court urges the United States Court of Appeals for

28  the Ninth Circuit to grant any such petition for the reasons set

-9-

1    forth above.

2                            **END OF MEMORANDUM**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-

Entered on Docket
September 29, 2014

EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**DIAMOND McCARTHY LLP**

Andrew B. Ryan, Esq. (*pro hac vice*)

James D. Sheppard, Esq. (*pro hac vice*)

Michael Fishel, Esq. (*pro hac vice*)

1201 Elm Street, Suite 3400
Dallas, TX 75270

Telephone: 214-389-5300

Facsimile: 214-389-5399

aryan@diamondmccarthy.com

jsheppard@diamondmccarthy.com

mfishel@diamondmccarthy.com

*Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**

Eric A. Nyberg, Esq. (Bar No. 131105)

Chris D. Kuhner, Esq. (Bar No. 173291)

1970 Broadway, Suite 225

Oakland, CA 94612

Telephone: 510-763-1000

Facsimile: 510-273-8669

*Local Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

Signed and Filed: September 28, 2014

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>      Debtor.<br>———————————————————<br>ALLAN B. DIAMOND, Chapter 11 Trustee<br>For Howrey LLP,<br><br>      Plaintiff,<br><br>      v.<br><br>JONES DAY<br><br>      Defendant. | Case No:  11-31376 DM<br>Chapter 11<br>Hon. Dennis Montali<br><br><br>Adv. P. No. 13-03093 DM<br><br><br><br>**ORDER GRANTING IN PART AND**<br>**DENYING IN PART DEFENDANT'S**<br>**MOTION TO DISMISS** |

1    For the reasons stated in the Court's Memorandum Decision on Motions to Dismiss issued

2   on September 9, 2014 (ECF No. 48), Defendant's Motion to Dismiss is **GRANTED** without leave

3   to amend as to the First Amended Complaint's Count V (Accounting pursuant to 11 U.S.C. §

4   542), Count VI (Turnover), and Count VII (Equitable Accounting); and the Motion to Dismiss is

5   **DENIED IN ALL OTHER RESPECTS.**

6    A status conference in this matter will be held on October 22, 2014 at 9:30 a.m.

7                                  ### End of Order ###

8   APPROVED AS TO FORM
    AND CONTENT:

9    _/s/  Jason McDonell_

10  Jones Day
    51 Louisiana Ave. N.W.
11  Washington, DC 20001-2113

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Entered on Docket
September 09, 2014

EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: September 9, 2014

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-31376DM |
| HOWREY LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |
| ALLAN B. DIAMOND, Chapter 11 | ) Adversary Proceeding |
| Trustee for Howrey LLP, | ) No. 13-3093 DM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JONES DAY LLP, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

MEMORANDUM DECISION ON MOTIONS TO DISMISS

I.   INTRODUCTION

Plaintiff Allan B. Diamond, chapter 11 Trustee ("Trustee")

for debtor Howrey LLP ("Howrey" or "Debtor"), filed multiple

nearly identical complaints for avoidance and recovery of actual

and constructive fraudulent transfers and for an accounting and

turnover and other relief, seeking to recover from several law

firm defendants the value of profits received by them with respect

to unfinished business that previously had been handled by Debtor.

Relying on District of Columbia law which in turn relies on *Jewel*

-1-

*v. Boxer*, 156 Cal. App. 3d 171 (1984), Trustee seeks to recover profits realized or to be realized by the defendant law firms from Debtor's unfinished business ("Howrey Unfinished Business"). Trustee alleges that pre-petition waivers executed by Howrey partners relieving them of their duty to account for profits made on the Howrey Unfinished Business (the "Jewel Waiver") constituted fraudulent transfers, and that the defendant law firms are liable as subsequent transferees. Several defendants moved for dismissal of the complaints, and on February 7, 2014, this court issued a memorandum decision ("First MTD Decision") explaining why it was denying the motions in part and granting them in part, with leave to amend.[1]  *See Diamond v. Pillsbury Winthrop Shaw Pittman, LLP*, 2014 WL 507511 (Bankr. N.D. Cal. Feb. 7, 2014).

In the First MTD Decision, the court relied in part on its prior decisions in *Greenspan v. Orrick Herrington & Sutcliffe (In re Brobeck, Phelger & Harrison LLP),* 408 B.R. 318 (Bankr. N.D. Cal. 2009) ("*Brobeck*"); *Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*, 2011 WL 1539796 (Bankr. N.D. Cal. Apr. 22, 2011) ("*Heller I*"); *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, 2013 WL 951706 (Bankr. N.D. Cal. Mar. 11, 2013) ("*Heller II*"); and *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, 2014 WL 323068 (Bankr. N.D. Cal. Jan. 28, 2014). The *Brobeck* and *Heller* actions pertained to unfinished business that was acquired by defendant law firms after the dates

---

[1]  The court entered the First MTD Decision and separate orders in the following adversary proceedings: A.P. No. 13-3056 (Haynes & Boone LLP); A.P. No. 13-3057 (Neal, Gerber & Eisenberg LLP); A.P. No. 13-3060 (Kasowitz Benson Torres & Friedman LLP); A.P. No. 13-3093 (Jones Day LLP); A.P. No. 13-3094 (Hogan Lovells US); and A.P. No. 13-3095 (Pillsbury Winthrop Shaw Pittman LLP).

-2-

of dissolution of the debtor law firms.  In the *Howrey* case,
however, Trustee is also seeking recovery of profits made by
several defendant law firms on Howrey Unfinished Business brought
to them by partners who departed <u>before</u> dissolution.

After the First MTD Decision, Trustee amended his complaints
in his actions against various law firms, including seven of the
eight defendant law firms that have filed the underlying motions
to dismiss: Neal, Gerber & Eisenberg LLP (A.P. No. 13-3057)
("Neal"); Kasowitz Benson Torres & Friedman LLP (A.P. No. 13-3060)
("Kasowitz"); Sheppard Mullin Richter & Hampton LLP (A.P. No. 13-
3062) ("Sheppard"); Jones Day LLP (A.P. No. 13-3093) ("Jones
Day"); Hogan Lovells US (A.P. No. 13-3094) ("Hogan"); Pillsbury
Winthrop Shaw Pittman LLP (A.P. No. 13-3095) ("Pillsbury"); and
Seyfarth Shaw LLP (A.P. No. 13-3254)("Seyfarth").  He filed a new
action against Perkins Coie LLP (A.P. No. 14-3032) ("Perkins").
Five of these eight firms (Neal, Kasowitz, Sheppard, Hogan, and
Seyfarth) solely acquired Howrey partners prior to dissolution;
the other three (Jones Day, Pillsbury, and Perkins) acquired
Howrey partners both pre- and post-dissolution.

Trustee asserts four claims against all of the defendants
based on their acquisition of Howrey Unfinished Business from
partners who departed prior to dissolution: (1) for an accounting
of unfinished business under 11 U.S.C. § 542; (2) for a turnover
of profits under 11 U.S.C. § 542; (3) for an equitable accounting;
and (4) for unjust enrichment.  Trustee asserts an additional four
claims for profits on Howrey Unfinished Business against the three
firms that acquired post-dissolution partners: (1) for avoidance
and recovery of the Jewel Waiver as an actual fraudulent transfer

-3-

under 11 U.S.C. §§ 548(a)(1)(A) and 550; (2) for avoidance and recovery of the Jewel Waiver as an actual fraudulent transfer under 11 U.S.C. §§ 544 and 550 and D.C. Code § 28-3104(a); (3) for avoidance and recovery of the Jewel Waiver as a constructively fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 550; (4) for avoidance and recovery of the Jewel Waiver as a constructively fraudulent transfer under 11 U.S.C. §§ 544 and 550 and D.C. Code § 28-3104(a).

The motions to dismiss the various complaints filed by the eight identified defendant law firms focused primarily on the claims relating to the pre-dissolution partners.[2]  However, after the motions to dismiss were filed, the United States District Court for the Northern District of California issued a decision in four "unfinished business" adversary proceedings in Heller Ehrman, LLP, holding that the defunct law firm could not recover profits generated by hourly rate matters brought by departing attorneys to new firms.  *Heller Ehrman LLP v. Davis, Wright, Tremaine, LLP*, --- B.R. ---, 2014 WL 2609743 (N.D. Cal. June 11, 2014) (the "Heller USDC Decision").  In addition, the New York Court of Appeals, in response to  certifications of questions by the Second Circuit in the cases of Thelen LLP and Coudert Brothers LLP, held that a dissolved law firm's pending hourly fee matters are not partnership "property" or "unfinished business" within the meaning of New York partnership law.  *In re Thelen LLP*, — N.E.3d —, 2014 WL 2931526 (N.Y. July 1, 2014) ("*Thelen*").  As a consequence of

---

[2]  In A.P. No. 13-3095, Trustee asserts various claims against certain former Debtor partners who joined Pillsbury.  Those claims are not part of Pillsbury's motion to dismiss and are not dealt with in this memorandum decision.

-4-

the intervening case law, Trustee and the three movants who
acquired post-dissolution partners expanded the scope of the
briefing to address the new decisions and their applicability in
the Howrey case.

On July 29, 2014, the court held a hearing on the motions to
dismiss.  For the reasons stated below, the court is granting the
motions to dismiss the section 542 accounting and turnover claims
and the equitable accounting claims arising from pre-dissolution
acquisition of former Howrey partners.  It is denying the balance
of the motions to dismiss.[3]

II.  DISCUSSION

**A.   Trustee Has Asserted Cognizable Claims Relating to
       Unfinished Business Acquired Post-Dissolution**

The Heller USDC Decision holds that under California law the
"unfinished business rule" of *Jewel* and its progeny is
inapplicable when attorneys from a dissolving law firm join other
law firms and bring with them work that the dissolving law firm
necessarily could not complete.  The *Thelen* decision deals with
New York law and holds that the unfinished business rule does not
apply to hourly rate matters.

Here, however, the law of the District of Columbia governs,
and the District of Columbia courts have applied the unfinished
business rule to hourly and contingency fee cases, have rejected
the position that "new retention agreements" executed by former
clients preclude enforcement of the unfinished business rule, and

---

[3]   The eight adversary proceedings have not been consolidated
but the motions were argued together.  This Memorandum Decision is
being filed in each of those adversary proceedings, with changes
only in the caption of each.

-5-

1  have overruled policy objections similar to those underlying the
2  Heller USDC Decision.  *See*, *Beckman v. Farmer*, 579 A.2d 618 (D.C.
3  1992) and *Robinson v. Nussbaum*, 11 F. Supp. 2d 1, (D. D.C.
4  1997)(both discussed in more detail in the First MTD Decision).

5      Notwithstanding the interpretation of California law in the
6  Heller USDC Decision and the change in New York law by the *Thelen*
7  decision, no party has cited, and the court has not found, any
8  change in the law of the District of Columbia since the First MTD
9  Decision.  Therefore, the court will adhere to District of
10 Columbia law as set forth in that decision.   The motions to
11 dismiss the claims based on Howrey Unfinished Business acquired
12 post-dissolution will be DENIED.

13     **B.    Trustee Has Not Asserted Cognizable Claims Relating to**
        **Unfinished Business Acquired Pre-Dissolution Under**
14      **Bankruptcy Code Section 542**

15     In the First MTD Decision, the court rejected the Trustee's
16 attempt to use fraudulent transfer laws to recover profits on pre-
17 dissolution matters that "no longer belonged to Debtor on the date
18 of the critical transfer" (i.e., March 9, 2011, the date that the
19 Howrey partners voted to dissolve the firm and adopted the Jewel
20 Waiver).  First MTD Decision at 20.  The court continued:

21
        Stated otherwise, <u>when partners left Debtor prior to
22      dissolution, taking Howrey Unfinished Business with
        them, that business itself and any future profits to be
23      realized on it was no longer property of Debtor that
        could have been subsequently disposed of by the Jewel
24      Waiver</u>, a fraudulent transfer. *Heller II,* 2013 WL 951706
        at *5; *Heller I,* 2011 WL 1539796 at *5; *Brobeck*, 408
25      B.R. at 338.

26 *Id.* (emphasis added).

27     As the "business itself and any future profits" from it were
28 not property of the Debtor as of the date of dissolution, the

                                  -6-

1  court held that the Trustee's section 542 claims were

2  unsustainable.  *Id.* at 24-25.  The court also observed that "on

3  the date of the Jewel Waiver the Howrey Unfinished Business that

4  had already been taken by previously departed partners did not

5  belong to Debtor and thus there was no transfer"). *Id.*  Trustee

6  still has not demonstrated how the business taken by pre-

7  dissolution partners was property of Debtor at the time of

8  dissolution, and the court will abide by its prior holdings in the

9  First MTD.  The motions to dismiss the section 542 claims will be

10  GRANTED without leave to amend.

11          **C.    Trustee Has Not Asserted Cognizable Claims For An**
                  **Equitable Accounting Relating to Unfinished Business**
12                **Acquired Pre-Dissolution**

13          Trustee alleges that when the pre-dissolution partners left

14  Debtor, they had a duty to account for and turn over any profits

15  generated on account of pre-dissolution matters pursuant to D.C.

16  Code §§ 33-104.04(b)(1) and 33-106.03(b)(3).  This is based on the

17  premise that those pre-dissolution partners had a duty of loyalty

18  to Debtor under that law to account to the partnership and hold as

19  trustee any property, profit or benefit derived by the partner in

20  the conduct and winding up of the partnership business.

21          The duty to account for profits by those partners is found in

22  D.C. Code § 33-106.03(b)(3), which states in relevant part:

23          Upon a partner's dissociation . . . [t]he partner's duty of
            loyalty under § 33-104.04(b)(1) [to account for partnership
24          profits] . . . continue[s] only with regard to <u>matters</u>
            <u>arising</u> and events occurring before the partner's
25          dissociation. . . .

26  D.C. Code § 33-106.03(b)(3) (emphasis added).

27          Trustee argues that those pre-dissolution partners therefore

28  had a statutory duty of loyalty to Debtor with respect to "matters

                                  -7-

arising" prior to their departure, and alleges that the law firm
defendants have collected revenues and/or profits relating to the
pre-dissolution matters.  Without an accounting from those law
firm defendants, Trustee allegedly cannot determine the amount of
the revenue received or the status of those pre-dissolution
matters.  He asserts that because the partners themselves had
fiduciary duties to account, the law firm defendants must provide
an accounting or Trustee will not have an adequate remedy at law.

The court rejects the Trustee's theory as it attempts to
impose fiduciary duties owed by individual departing partners on
the defendant law firms, when no such duty exists.  As stated in
*Heller II,* the law firm defendants do not have fiduciary
obligations to the Debtor or the Trustee.  *Heller II* at *5
(Defendant firm contended "that it had no fiduciary duty to
Heller.  The court agrees.") Because an accounting is a remedy
imposed upon fiduciaries, it cannot be imposed upon those
defendants here.

While the Trustee cites scant authority for the proposition
that an accounting can be acquired from a non-fiduciary, that
principle does not hold up under further examination.  Although
this court relied on  *Development Specialists, Inc. v. Akin Gump
Strauss Hauer & Feld LLP (In re Coudert Brothers LLP),* 480 B.R.
145, 160-61 (S.D.N.Y.2012) in the First MTD Decision, its
reasoning was rejected in *Thelen*.  Despite Trustee's reliance on
*Robinson*, that case did not extend the duty to account to a third
party not previously a member of the partnership formed by the
litigants.

Further, older decisions that predate modern discovery seem

-8-

1 | out of date.  More persuasive are the recent decisions relied upon

2 | by Defendants, including *Haynes v. Navy Federal Credit Union*, __

3 | F. Supp. 2d __, 2014 WL 2591371 (D. D.C. June 10, 2014).  There

4 | the district court rejected an aggrieved mortgagor's claim for an

5 | accounting, holding:

> Plaintiff's request for an accounting in equity as part of
> the overall relief in this case also fails, as this is a
> remedy premised on a breach of fiduciary duty or contract
> that Plaintiff does not establish.  'An accounting is a
> detailed statement of debits and credits between parties
> arising out of a contract or a fiduciary relation.'  *Bates v.*
> *Nw. Human Servs., Inc.,* 466 F. Supp. 2d 69, 103 (D.D.C.
> 2006). Such relief may be obtained at the close of litigation
> ... as long as the plaintiff is able to show that the remedy
> at law is inadequate.  (Quotation marks omitted; emphasis
> added.)

*Haynes*, 2014 WL 2591371, *7.

Although the Trustee's claim under this theory must fail, as discussed below, he may have an adequate remedy at law on his remaining count.

### D. Trustee Has Asserted Cognizable Claims For Unjust Enrichment Relating to Howrey Unfinished Business Acquired Pre-Dissolution

In the similar counts in the complaints under this theory, the Trustee alleges that when the pre-dissolution partners left Howrey and joined their respective law firms, they transferred or caused a transfer of revenue and/or profits on the Howrey Unfinished Business to their new law firms.  He contends that because the partners failed to account for the revenue and/or profits, a benefit has been conferred upon the respective defendants and he has a superior claim to those profits because those pre-dissolution partners had a duty to hold profits in trust as required by District of Columbia law.  Because he assets that if the defendants are allowed to retain those benefits the result

-9-

1  will be unjust and inequitable, he seeks restitution of the
2  amounts of profits collected and a judgment against the respective
3  law firms in an amount of their gain.

4      Defendants argue that unjust enrichment under District of
5  Columbia law requires that the plaintiff have parted with some
6  value.  They rely on cases such as *Nevius v. Africa Inland Mission
7  Intn'l*, 511 F. Supp.2d 114 (D.D.C. 2007) and *Oceanic Exploration
8  Co. v. ConocoPhillips, Inc.*, 2006 W.L. 2711527 (D.D.C. Sept. 21,
9  2006).

10     Those cases state that an element of unjust enrichment is
11 that the plaintiff confer a benefit.  But those cases do not rule
12 out the situation where a plaintiff has an expectation of the
13 benefit that it loses to a third party.  In *Nevius* and *Oceanic*,
14 the parties who bestowed the benefit had no connection with the
15 plaintiff, nor did they deprive the plaintiff of anything it was
16 otherwise entitled to.  In contrast, cases cited by the Trustee do
17 not state the rule in the active voice, viz., plaintiff conferred
18 a benefit; they do so in the passive voice, viz., a benefit was
19 conferred upon the defendant.  See, for example, *State Farm
20 Gen'l Ins. Co. v. Stewart,* 288 Ill. App.3d 678 (1997) for the
21 proposition that:

22     A plaintiff alleging an unjust enrichment may be seeking to
       recovery benefits which he gave directly to the defendant, or
23     one which was transferred to the defendant by a third party.

24 288 Ill. App.3d at 691, citing *HPI Health Care Servs.*, 131 Ill. 2d
25 145, 137 Ill. Dec. 19, 545 N.E. 2d 672.

26     Under District of Columbia law, in *Ellipso, Inc. v. Mann,* 460
27 F. Supp.2d 99 (D.D.C. 2006), the court described an unjust
28 enrichment action as a quasi-contract, a contract implied in law,

-10-

1  when a person retains a benefit (usually money) which in justice

2  and equity belongs to another.  Id. at 104, citing *4934, Inc. v.*

3  *District of Columbia Dept. Of Employment Servs.,* 605 A.2d 50, 55

4  (D.C. 1992).

5      The court recognized that the elements of unjust enrichment

6  are similar to those of quantum meruit, with the added element

7  that the plaintiff must show that it would be unjust for the

8  recipient of a benefit to retain that benefit.  Id., citing *United*

9  *States v. Ideal Electronics Security Co., Inc.,* 81 F.3d 240 (D.C.

10  Cir. 1996) (internal quotation marks omitted).  Similarly, the

11  district court in *Bates v. Nw. Human Servs., Inc.,* 466 F. Supp. 2d

12  69 (D.D.C. 2006), cited *Ellipso* and noted that the District of

13  Columbia Court of Appeals requires that plaintiff bringing a claim

14  for unjust enrichment show that the plaintiff had a reasonable

15  expectation of payment, the defendant should reasonably have

16  expected to pay, or society's reasonable expectations of person

17  and property would be defeated by nonpayment, citing *Heller v.*

18  *Fortis Benefits Ins. Co.,* 142 F.3d 487, 495 (D.C. Cir. 1998).

19      The rule has been stated slightly otherwise in *Lorazepan &*

20  *Clorazepate Antitrust Litigation,* 295 F. Supp. 2d 30 (D.D.C.

21  2003).  There the court stated that to articulate a general claim

22  for unjust enrichment, plaintiffs must establish that they

23  conferred a legally cognizable benefit upon defendants; defendants

24  possessed an appreciation or knowledge of the benefit; and

25  defendants accepted or retained the benefit under inequitable

26  circumstances.

27      This result is consistent with the Restatement of Restitution

28  and Unjust Enrichment which states that if third party makes a

-11-

1  payment to a defendant, a claimant with a better legal or
2  equitable right is entitled to restitution from the defendant to
3  prevent unjust enrichment.  See, RESTATEMENT (THIRD) OF
4  RESTITUTION AND UNJUST ENRICHMENT § 48 (2011).[4]

5      Taking all of this together, the court is satisfied that the
6  Trustee has the better argument here and that he has properly
7  stated a claim for unjust enrichment.

8      The pre-dissolution partners who left Debtor abrogated their
9  responsibility under applicable District of Columbia law and as
10 alleged, deprived Debtor of pre-dissolution partnership profits
11 with regard to "matters arising"[5] (namely Howrey Unfinished
12 Business) before the partners' dissociation.

13     With Debtor's expectations frustrated, it follows that the
14 law firm defendants do not have a greater legal or equitable claim
15 to the profits the pre-dissolution partners brought with them,
16 away from Debtor.

17     Finally, the court will not conclude that, on the mere
18 allegations of the complaints alone, that retention of such
19 profits by the law firm defendants is "just" rather than what the
20 Trustee contends is "unjust."  Whether the Trustee may only
21 recover profits on Howrey Unfinished Business attributed to the
22 former Debtor partners themselves or he may recover all profits
23 realized by the law firms may require the finder of fact to
24 determine how much would be "just" to return to the Trustee and

25 ─────────────────────
26     [4]  Defendants argue that the District of Columbia has not
   adopted this section of the Restatement. The Trustee argues
27 persuasively that other provision have been adopted and this one
   like would be adopted too.

28     [5]  See, D.C. Code § 33-106.03(b)(3), quoted, infra.

-12-

1   how much would be "unjust" to take from the defendants.   The

2   motions to dismiss this claim will be DENIED.

3   III.   CONCLUSION

4        Counsel for the Trustee should serve and upload orders

5   disposing of the motions to dismiss in each adversary proceeding

6   consistent with this Memorandum Decision.   The court will hold

7   status conferences in each adversary proceeding on October 22,

8   2014, at 9:30 a.m.

9                **END OF MEMORANDUM DECISION**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-