1  Robert A. Mittelstaedt (60359)
   Jason McDonell (115084)
2  Brian D. McDonald (224201)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  E-mail:       ramittelstaedt@jonesday.com

6  Shay Dvoretzky (*Admitted Pro Hac Vice*)
   JONES DAY
7  51 Louisiana Avenue, N.W.
   Washington, D.C.  20001.2113
8  Telephone:    (202) 879-3939
   Facsimile:    (202) 626-1700
9  E-mail:       sdvoretzky@jonesday.com

10 Attorneys for Defendant
   JONES DAY

11

12                   UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 | **HOGAN LOVELLS US LLP,** | **CASE NOS. 14-cv-04889-JD (lead case)** |

**HOGAN LOVELLS US LLP,**

    **Defendant-Appellant,**

v.

**HOWREY LLP,**

    **Plaintiff-Appellee.**

_____

**PILLSBURY WINTHROP SHAW PITTMAN LLP,**

    **Defendant-Appellant,**

v.

**HOWREY LLP,**

    **Plaintiff-Appellee.**

_____

**SEYFARTH SHAW LLP,**

**CASE NOS. 14-cv-04889-JD (lead case)**
             **14-cv-04882-JD**
             **14-cv-04883-JD**
             **14-cv-04884-JD**
             **14-cv-04885-JD**
             **14-cv-04886-JD**
             **14-cv-04887-JD**
             **14-cv-04888-JD**

**BRIEF OF DEFENDANT-APPELLANT JONES DAY**

**Date:**     **May 6, 2015**
**Time:**     **10:00 am**
**Judge:**    **Hon. James Donato**

1          **Defendant-Appellant,**

2     **v.**

3     **HOWREY LLP,**

4          **Plaintiff-Appellee.**

5     _____

      **PERKINS COIE LLP,**
6
7          **Defendant-Appellant,**

8     **v.**

9     **HOWREY LLP,**

10         **Plaintiff-Appellee.**

11    _____

      **NEIL, GERBER & EISENBERG LLP,**

12         **Defendant-Appellant,**

13    **v.**

14    **HOWREY LLP,**

15         **Plaintiff-Appellee.**

16    _____

17    **KASOWITZ, BENSON, TORRES &
      FRIEDMAN LLP,**

18         **Defendant-Appellant,**

19    **v.**

20    **HOWREY LLP,**

21         **Plaintiff-Appellee.**

22    _____

23    **SHEPPARD MULLIN RICHTER &
      HAMPTON LLP,**

24         **Defendant-Appellant,**

25    **v.**

26    **HOWREY LLP,**

27         **Plaintiff-Appellee.**

28

1    **JONES DAY,**

2            **Defendant-Appellant,**

3    **v.**

4    **HOWREY LLP,**

5            **Plaintiff-Appellee.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CORPORATE DISCLOSURE STATEMENT**

Because Defendant-Appellant Jones Day is a partnership, no corporate disclosure statement is required under Rule 8012 of the Federal Rules of Bankruptcy Procedure.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   JURISDICTIONAL STATEMENT ................................................................... 4

III.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW................. 4

IV.   STANDARD OF REVIEW ................................................................................ 4

V.    FACTUAL AND PROCEDURAL BACKGROUND......................................... 5

VI.   ARGUMENT ...................................................................................................... 6

    A.   HOWREY HAS NO RIGHT TO PROFITS EARNED BY THIRD
        PARTIES FOR WORK THAT HOWREY DID NOT PERFORM ...................... 6

        1.   A Law Firm Does Not Own Client Matters ................................................. 7

        2.   Partnership Law Does Not Give Howrey Any Property Interest In
            Client Matters Or Profits Earned For Work That It Did Not Perform ....... 9

        3.   *Heller* And *Thelen* Confirm That Howrey Has No Property Interest
            In The Matters At Issue Or Profits Earned By Jones Day ....................... 14

    B.   THE BANKRUPTCY COURT'S CONTRARY CONCLUSION IS
        WRONG............................................................................................................ 17

        1.   The Bankruptcy Court's Analytical Framework Is Based On
            Decisions That Have Been Overruled Or Repudiated .............................. 17

        2.   None of the Bankruptcy Court's Explanations Supports Its View
            That Howrey Has A Property Interest In Client Matters Or Profits
            Earned By Jones Day ................................................................................ 18

        3.   The Bankruptcy Court's Unprecedented Conclusion Regarding Pre-
            Dissolution Matters is Unsupportable........................................................ 20

    C.   THE TRUSTEE'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT
        REASONS ...................................................................................................... 22

        1.   The Trustee's Fraudulent Transfer Claims Fail Because Howrey Is
            Entitled, At Most, To Post-Dissolution Profits From The Use Of Its
            Capital, And No Such Profits Exist........................................................... 22

        2.   The Trustee's Fraudulent Transfer Claims Also Fail Because Jones
            Day Was Not The Transferee Of Howrey's Property.............................. 24

        3.   The Trustee's Unjust Enrichment Claim Is Not Cognizable Under
            D.C. Law ................................................................................................... 24

VII.  CONCLUSION ................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

C**ASES**

4

*Associated Banc-Corp. v. John Harland Co.*,
  No. 06-C-1097, 2007 WL 128337 (E.D. Wis. Jan. 11, 2007).................................................25

*Beckman v. Farmer*,
  579 A.2d 618 (D.C. 1990).......................................................................................... passim

*Beste v. Lewin*,
  488 B.R. 663 (N.D. Cal. 2012) .....................................................................................4

*Blut v. Katz*,
  99 A.2d 785 (N.J. 1953)...............................................................................................23

*Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*,
  519 F. App'x 657 (11th Cir. 2013) ...............................................................................20

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Bros.)*,
  480 B.R. 145 (S.D.N.Y. 2012)...............................................................................17, 18

*Dwyer v. Nicholson*,
  89 A.D.2d 597 (N.Y. App. Div. 1982).........................................................................10

*Geist v. Burnstine*,
  19 N.Y.S.2d 76 (1940) ................................................................................................10

*Geron v. Robinson & Cole LLP*,
  476 B.R. 732 (S.D.N.Y. 2012).......................................................................................7

*Giovanazzi v. Schuette (In re Lebbos)*,
  No. 11-1735, 2012 Bankr. LEXIS 5962 (B.A.P. 9th Cir. Dec. 31, 2012) .................5

*Heller Ehrman LLP v. Jones Day*,
  -- B.R. --, No. 14-01237, 2014 WL 2609743 (N.D. Cal. Jun. 11, 2014) ......................... passim

*Hudson v. Kemper*,
  153 A.2d 316 (D.C. 1959)...........................................................................................23

*In re Brobeck Phelger & Harrison LLP*,
  408 B.R. 318 (Bankr. N.D. Cal. 2009).................................................................7, 17, 18

*In re Feiler*,
  218 B.R. 957 (Bankr. N.D. Cal. 1998)...................................................................24

*In re Heller Ehrman LLP*,
  2013 WL 951706 (N.D. Cal. Bankr. Mar. 11, 2013) (Montali, J.) ...........................17

*In re Robert W. Mance III*,
  980 A.2d 1196 (D.C. 2009)......................................................................................7, 8

*In re Thelen LLP*,
  24 N.Y.3d 16 (2014) ......................................................................................... passim

*Int'l Bhd. of Teamsters v. Ass'n of Flight Attendants*,
  663 F. Supp. 847 (D.D.C. 1987) ................................................................................25

*Jacobson v. Wikholm*,
  29 Cal. 2d 24 (1946) ..................................................................................................23

*Jewel v. Boxer*,
  156 Cal. App. 3d 171 (1984)............................................................................. passim

*King & King, Chartered v. Harbert Int'l, Inc.*,
  436 F. Supp. 2d 3 (D.D.C. 2006) ................................................................................8

*Labrum & Doak v. Ashdale*,
  227 B.R. 391 (Bankr. E.D. Pa. 1998)........................................................................10

*Mattel, Inc. v. MGA Entm't, Inc.*,
  No. 04-9049, 2011 WL 836418 (C.D. Cal. Mar. 4, 2011).......................................25

*Maxwell v. Gallagher*,
  709 A.2d 100 (D.C. 1998).............................................................................................7

*Neuman v. Akman*,
  715 A.2d 127 (D.C. 1998)............................................................................................8

*Nevius v. Africa Inland Mission Int'l*,
  511 F. Supp. 2d 114 (D.D.C. 2007) ..........................................................................25

*News World Commc'ns, Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. 2005)..................................................................................24, 25

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
  No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) .........................................25

*Office of Peoples' Counsel v. Public Serv. Comm'n,*
477 A.2d 1079 (D.C. 1984).................................................................................23

*Peart v. D.C. Hous. Auth.,*
972 A.2d 810 (D.C. 2009)..................................................................................25

*Robinson v. Nussbaum,*
11 F. Supp. 2d 1 (D.D.C. 1997) .................................................................. passim

*Rosenfeld, Meyer & Susman v. Cohen,*
146 Cal. App. 3d 200 (1983)..........................................................................10, 13

*Rothman v. Dolin,*
20 Cal. App. 4th 755 (1993)................................................................................10

*Spirtos v. Anderson (In re Spirtos),*
No. 10-1118, 2011 Bankr. LEXIS 907 (B.A.P. 9th Cir. Feb. 2, 2011)....................5

*United States v. Cherokee Nation of Okla.,*
480 U.S. 700 (1987)..............................................................................................6

*Weisbrod v. Ely,*
767 P.2d 171 (Wyo. 1989)...................................................................................23

*Wirum v. Warren (In re Warren),*
568 F.3d 1113 (9th Cir. 2009)...............................................................................5

*Young v. Delaney,*
647 A.2d 784 (D.C. 1994) ........................................................................... passim

STATUTES

11 U.S.C. § 542 .....................................................................................................6

28 U.S.C. § 157(c) .................................................................................................4

28 U.S.C. § 158(a)(3)..........................................................................................4, 6

D.C. Code § 33 ......................................................................................................5

D.C. Code § 33-104.01(h)....................................................................................14

D.C. Code § 33-104.04(b)(1)............................................................................9, 21

D.C. Code § 33-104.04(b)(3)...............................................................................13

Brief of Defendant-Appellant Jones Day

D.C. Code § 33-106.03(b)(3) ...................................................................................9, 21

D.C. R. Prof. Conduct 1.5(e) .........................................................................................8

D.C. R. Prof. Conduct 1.16(d) ......................................................................................8

D.C. R. Prof. Conduct 5.6 cmt. 1 .................................................................................8

D.C. R. Prof. Conduct 5.6(a) ........................................................................................8

RUPA ................................................................................................................. passim

RUPA § 404 ...............................................................................................................13

RUPA § 404 cmt.1 .....................................................................................................13

RUPA § 404 cmt. 2 ....................................................................................................14

UPA...........................................................................................................7, 13, 14, 23

UPA § 18(f) (1914) ....................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 8002 .................................................................................................4

Fed. R. Bankr. P. 8004 .................................................................................................4

Fed. R. Bankr. P. 8005 .................................................................................................4

The Wall Street Journal , *Ruling Limits Defunct Law Firms' Claims to Unfinished Business* (Jul. 1, 2014), *available at* http://blogs.wsj.com/law/2014/07/01/ruling-limits-defunct-law-firms-claims-to-unfinished-business/ .........................................................................................1

Brief of Defendant-Appellant Jones Day

1

## I.    **INTRODUCTION**

2        The ultimate question in this case is whether a law firm that is fired by a client can recover

3    profits earned by the new firm that the client hires to represent it.  Common sense, equity,

4    statutory language, and precedent confirm that the answer is no.  Clients decide which law firm

5    handles their work and which firm receives the revenues and profits from that work.  No law firm

6    owns client matters.  Clients are free to change law firms for whatever reason, and a law firm that

7    a client fires—for any reason—has no right to demand that the client's new firm compensate it

8    for the loss.  Indeed, no law firm has the right to revenues or profits that it did not earn by

9    providing legal services.

10       Howrey's contrary argument contravenes bedrock principles governing the attorney-client

11   relationship.  It also defies the relevant law:  Judge Breyer of this district and the New York Court

12   of Appeals (that state's highest court) both recently held as a matter of law—based on principles

13   that apply equally across jurisdictions—that defunct law firms have no property interest in the

14   profits earned by third-party firms that represent clients that terminated the defunct firms.  *See*

15   *Heller Ehrman LLP v. Jones Day*, -- B.R. --, No. 14-01237, 2014 WL 2609743 (N.D. Cal. Jun. 11,

16   2014); *In re Thelen LLP*, 24 N.Y.3d 16 (2014).[1]  In the words of the plan administrator of the

17   Coudert bankruptcy, these decisions "put a stake in the heart of unfinished business claims around

18   the country."[2]

19       Both holdings rest on the fundamental principle that "[a] law firm never owns its client

20   matters."  *Heller*, 2014 WL 2609743, at *5; *see Thelen*, 24 N.Y.3d at 28-29.  Because clients

21   have the "unqualified right to terminate the attorney-client relationship at any time without any

22   obligation other than to compensate the attorney for the fair and reasonable value of the

23   *completed services*," *Thelen*, 24 N.Y.3d at 28, "the most [a] law firm can be said to have is" a

24   right to be paid for services that it actually performs, and "an *expectation* of future business,"

25   _____

26   [1] The New York Court of Appeals issued a single opinion addressing the identical certified
     questions arising from the Thelen and Coudert bankruptcy proceedings.

27   [2] The Wall Street Journal, *Ruling Limits Defunct Law Firms' Claims to Unfinished Business* (Jul.
     1, 2014), *available at* http://blogs.wsj.com/law/2014/07/01/ruling-limits-defunct-law-firms-
28   claims-to-unfinished-business/.

1    *Heller*, 2014 WL 2609743, at *5.  That *expectation* "disappear[s] as soon as either (1) the client

2    removes the business, which it can do at will, or (2) the law firm ceases to be able to perform the

3    work [necessary] to generate [any] expected future profits."  *Id.* at *6.

4          Against this backdrop, both courts rejected the trustees' reliance on state partnership law.

5    Neither partnership law nor cases applying the so-called unfinished business doctrine "defin[e]

6    what makes up the partnership property" that is subject to the state-law duty to account.  *Thelen*,

7    24 N.Y.3d at 31.  Because "client matters are not partnership property" of a law firm, the duty to

8    account simply does not apply to profits earned by a third-party firm on matters that clients hired

9    that firm to handle after firing a defunct firm.  *Id.* at 28-29; *see Heller*, 2014 WL 2609743, at *4-7.

10         *Heller* and *Thelen* further concluded that it would be inequitable and would contravene

11   public policy to force third-party firms to turn over their profits to a defunct firm that contributed

12   nothing to performing the work.  In addition to creating an "unjust windfall" for dissolving firms,

13   the trustees' position would impede client choice and attorney mobility by "discourag[ing] third-

14   party firms from [taking on] former partners of dissolved firms and discourag[ing] third-party

15   firms from accepting new clients formerly represented by dissolved firms."  *Heller*, 2014 WL

16   2609743, at *7; *Thelen*, 24 N.Y.3d at 31-32.  "In the end, the trustees' theory simply does not

17   comport with [the legal] profession's traditions and the commercial realities of the practice of law

18   today …."  *Thelen*, 24 N.Y.3d at 34.

19         The logic of these decisions applies *a fortiori* to the Trustee's claims in this case, which

20   go even *further* than the positions that *Heller* and *Thelen* rejected.  The Trustee asserts—and the

21   Bankruptcy Court agreed—that Howrey is entitled to profits that Jones Day earned on matters

22   that clients hired it to handle not only after, but also before, Howrey dissolved.  Under the

23   Bankruptcy Court's unprecedented holding, any partner who changes law firms (under any

24   circumstances) and his new law firm have a duty to account to the former firm for any profits on

25   matters for which clients terminated the old firm and retained the new firm.  Such a radical

26   change in the law would harm clients and attorneys by imposing liability in connection with the

27   many moves that lawyers make every day (including lateral moves between two financially stable

28   firms).  Under the Trustee's theory, the law firm that first works on a matter has a right to all

Brief of Defendant-Appellant Jones Day

1  profits from that matter in perpetuity—essentially, a risk-free annuity—even though a client fires

2  the first firm and hires a new firm to handle its matters.  That is not the law.

3        The Bankruptcy Court's conclusion that the Trustee nevertheless has a right to profits

4  earned by Jones Day is wrong at every turn.

5        1.     Property:  The Bankruptcy Court erred in concluding that Howrey has a state-law

6  property interest in client matters and Jones Day's profits.  D.C. law embraces the universal

7  principles articulated in *Heller* and *Thelen*.  The Bankruptcy Court's reliance on *Beckman v.*

8  *Farmer*, 579 A.2d 618 (D.C. 1990), *Young v. Delaney*, 647 A.2d 784 (D.C. 1994), and *Robinson*

9  *v. Nussbaum*, 11 F. Supp. 2d 1 (D.D.C. 1997), is misplaced.  Those cases are inapposite for all the

10  reasons that *Heller* and *Thelen* gave in rejecting the trustees' reliance on similar California and

11  New York cases.  Indeed, no D.C. case has ever given a defunct law firm a right to profits earned

12  by a third-party firm under new retainer agreements that clients signed with the third-party firm

13  after firing the defunct firm.  Thus, because Howrey has no property interest in the matters at

14  issue or in Jones Day's profits, no property belonging to Howrey was transferred to Jones Day

15  (fraudulently or otherwise), and Jones Day was not unjustly enriched by any of Howrey's

16  property.  The Trustee's fraudulent transfer and unjust enrichment claims fail as a matter of law.

17        2.  Fraudulent Transfer Claims (Post-Dissolution Matters):  The Trustee's fraudulent

18  transfer claims also fail for two additional, independent reasons.  *First*, even if Howrey had a

19  property interest in post-dissolution profits earned by Jones Day, it would, at most, be entitled to

20  post-dissolution profits derived from the use of Howrey's capital.  There are no such profits:  The

21  Trustee does not allege that Jones Day used any of Howrey's capital or resources to handle the

22  matters at issue (and indeed, all the resources and capital Jones Day used were entirely its own).

23        *Second*, the Trustee cannot trace any form of consistently identified property from

24  Howrey or its partners to Jones Day.  If the alleged property interest is defined as a direct right to

25  future profits, then *clients*—not Howrey or its partners—transferred that right to Jones Day.  And

26  if the property interest is defined as a legal benefit—i.e., the *Jewel* waiver—that benefit remains

27  to this day with the former Howrey partners; they never transferred it to Jones Day.

28        3. Unjust Enrichment Claim (Pre-Dissolution Matters):  The Trustee's unjust enrichment

Brief of Defendant-Appellant Jones Day

- 3 -

1    claim likewise fails for independent reasons.  Contrary to the Bankruptcy Court's conclusion,

2    there is nothing unjust about Jones Day keeping profits from work that it performed using its own

3    resources, with no help from Howrey.  Rather, it is the Trustee's position that creates an unjust

4    result.  In any event, the Trustee's unjust enrichment claim is premised on an indirect benefit

5    theory that D.C. law rejects.

6    **II.     JURISDICTIONAL STATEMENT**

7            The Bankruptcy Court had jurisdiction to enter proposed findings of fact and conclusions

8    of law pursuant to 28 U.S.C. § 157(c).  On September 29, 2014, the Bankruptcy Court entered an

9    order denying Jones Day's Motion to Dismiss the First Amended Complaint (ER 138).  Jones

10   Day filed a timely Notice of Appeal (ER 170), Statement of Election to Have Appeal Heard by

11   District Court (ER 172), and Motion for Leave to Appeal (ER 174) on October 14, 2014.  *See*

12   Fed. R. Bankr. P. 8002, 8004, 8005.  This Court has jurisdiction pursuant to 28 U.S.C.

13   § 158(a)(3) and this Court's Order Granting Leave to Appeal (ER 194).

14   **III.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW**

15           1.      Do the Trustee's fraudulent transfer and unjust enrichment claims fail as a matter

16   of law because a law firm has no property interest in profits earned by a third-party law firm on

17   matters that clients chose the third-party firm to handle after discharging the original firm, either

18   before or after the original firm dissolves?

19           2.      Do the Trustee's fraudulent transfer and unjust enrichment claims fail as a matter

20   of law because none of the profits earned by Jones Day are attributable to the use of Howrey's

21   capital?

22           3.      Do the Trustee's fraudulent transfer claims fail as a matter of law because Jones

23   Day was not the transferee of any property belonging to Howrey?

24           4.      Does the Trustee's claim for unjust enrichment fail as a matter of law because a

25   law firm is not unjustly enriched when it keeps fees that clients paid it for work on matters that

26   clients hired that firm to perform?

27   **IV.    STANDARD OF REVIEW**

28           This Court reviews a Bankruptcy Court's denial of a motion to dismiss de novo.  *Beste v.*

Brief of Defendant-Appellant Jones Day

1    *Lewin*, 488 B.R. 663, 667 (N.D. Cal. 2012); *Wirum v. Warren* (*In re Warren*), 568 F.3d 1113,

2    1116 (9th Cir. 2009).  "De novo means review is independent, with no deference given to the trial

3    court's conclusion."  *Giovanazzi v. Schuette* (*In re Lebbos*), No. 11-1735, 2012 Bankr. LEXIS

4    5962, at *39 (B.A.P. 9th Cir. Dec. 31, 2012); *see Spirtos v. Anderson* (*In re Spirtos*), No. 10-1118,

5    2011 Bankr. LEXIS 907, at *18-19 (B.A.P. 9th Cir. Feb. 2, 2011).

6    ## V.    FACTUAL AND PROCEDURAL BACKGROUND

7            In wake of an "inevitable" "financial downfall" that ensured that "the firm would not

8    survive," Howrey LLP dissolved on March 15, 2011.  ER 95-108, 110 (First Amended Complaint

9    ("FAC")).  These financial problems caused Howrey's clients to find new counsel and its partners

10   to leave, both before and after the firm voted to dissolve.  Twenty-two former Howrey partners

11   joined Jones Day—fifteen who dissociated from Howrey before Howrey dissolved ("Pre-

12   Dissolution Partners") (*id.* 84-86), and seven who dissociated from Howrey on or after its date of

13   dissolution ("Post-Dissolution Partners") (*id.* 86-87).  Some of the former Howrey clients also

14   chose Jones Day.  Jones Day represented these clients using entirely its own resources, capital,

15   and personnel; the Trustee does not allege that Howrey contributed anything to those efforts.

16           The Trustee for the Howrey estate sued Jones Day, seeking to recover profits earned by

17   Jones Day on matters for which clients terminated Howrey and retained Jones Day, both before

18   and after Howrey dissolved.  According to the Trustee, state partnership law (in his view, that of

19   the District of Columbia ("D.C.")) and a line of cases associated with *Jewel v. Boxer*, 156 Cal.

20   App. 3d 171 (1984), impose on a partner a duty to account to a dissolved partnership for the

21   profits "derived by the partner in the conduct and winding up of the partnership business."[3]  The

22   FAC alleges that, as to the post-dissolution matters, Howrey's interest in future profits was

23   fraudulently transferred to Jones Day.  And as to the pre-dissolution matters, the Trustee asserts

24

25   ---

     [3] Jones Day disputes many of the factual allegations in the FAC, but assumes the truth of those
26   allegations for purposes of this appeal only, without conceding their truth for any other purpose.
     Moreover, solely for purposes of this appeal, Jones Day assumes, as Plaintiff alleges, that D.C.
27   law governs each of Plaintiff's claims and that Title 33 of the District of Columbia Official Code,
     which was repealed in 2011, governs the obligations of Howrey's former partners to one another.
28   ER 94, 118-19, 121 (FAC).

1    that Jones Day was unjustly enriched by keeping profits for work that Jones Day performed on

2    matters previously handled by Howrey.[4]

3         Jones Day moved to dismiss the FAC in its entirety (ECF 36).  The Bankruptcy Court

4    denied Jones Day's motion with respect to the post-dissolution matters and the pre-dissolution

5    unjust enrichment claim.  ER 138; *see also* ER 130, 137 (Mem. Dec. ECF 48 ("*Howrey II*")).  In

6    reaching its decision, the Bankruptcy Court cast aside recent decisions in *Heller* and *Thelen* and

7    reaffirmed its previous holding that Howrey has a property interest in profits earned by Jones Day.

8    ER 129-30 (*Howrey II*) (stating that the court would adhere to its earlier decision regarding Jones

9    Day's motion to dismiss the original complaint, *see* ER 53 (Mem. Dec., ECF 28 ("*Howrey I*"))).

10        Jones Day filed a timely Notice of Appeal (ER 170) and Motion for Leave to Appeal

11   pursuant to 28 U.S.C. § 158(a)(3) (ER 174).  This Court granted Jones Day's Motion for Leave to

12   Appeal on November 20, 2014 (ER 194).

13   **VI.   ARGUMENT**

14        **A.   HOWREY HAS NO RIGHT TO PROFITS EARNED BY THIRD PARTIES
          FOR WORK THAT HOWREY DID NOT PERFORM**
15

16        Each of the Trustee's claims hinges on the premise that Howrey has a state-law property

17   interest in the matters at issue and the profits earned by Jones Day.  Absent such an interest, the

18   Trustee's claims fail as a matter of law:  No property belonging to Howrey was transferred to

19   Jones Day, and Jones Day was not unjustly enriched by any of Howrey's property.

20        The Trustee asserts that partnership law gives Howrey a property interest in Jones Day's

21   profits.  He relies on the state-law fiduciary duty among partners to "account" to one another for

22   "partnership property" as the partnership "winds up."  But partnership law does not create new

23   property interests; "rather, it supplies default rules for how a partnership upon dissolution *divides*

24   property as elsewhere defined in state law."  *Thelen*, 24 N.Y.3d at 28; *see also United States v.*

25   *Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) (explaining that fiduciary duties "do not

26   ─────────────
     [4] The Trustee also asserted accounting and turnover claims under 11 U.S.C. § 542 and an
27   accounting claim under state law with respect to the pre-dissolution matters.  ER 118-20 (FAC).
     The Bankruptcy Court granted Jones Day's motion to dismiss those claims.  ER 138 (Order); *see*
28   *also* ER 131, 133 (*Howrey II*).

1  create property rights where none would otherwise exist"); *Geron v. Robinson & Cole LLP*, 476

2  B.R. 732, 742 (S.D.N.Y. 2012) ("The purpose of [Uniform Partnership Act ("UPA")] is to

3  harmonize partners' duties regarding partnership property, not to delineate the scope of such

4  property."). A client matter is never a law firm's "partnership property." Only clients own their

5  matters. At most, a law firm has a property interest in fees earned for work the client allows it to

6  perform on a matter. When a client fires one firm and retains another, there is no remaining

7  "partnership business" for which to account.

8       Cases applying the so-called unfinished business doctrine do not create a property interest

9  where state law supplies none; moreover, those cases—which imposed a duty to account only on

10  former partners for profits that those partners earned on business of the dissolved partnership—

11  provide no support for Howrey's attempt to obtain profits earned by Jones Day for *Jones Day's*

12  partnership business. Indeed, until Judge Montali's 2009 decision in the Brobeck bankruptcy, *no*

13  court had imposed liability on third-party firms for profits earned from their work. *See In re*

14  *Brobeck Phelger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D. Cal. 2009). *Brobeck* was never

15  reviewed on appeal, and subsequent decisions from a judge in this district and the New York

16  Court of Appeals demonstrate that it was wrongly decided. The principles animating those recent

17  decisions apply with equal force to D.C., and the Trustee's claims here likewise fail.

## 1.    A Law Firm Does Not Own Client Matters

19       The fundamental premise of the Trustee's theory is that Howrey has a property interest in

20  client matters that entitles it to profits earned by a third-party firm for work that clients hired the

21  third party to perform. But a law firm never owns its client matters; rather, a law firm's only

22  property interest in a client matter is a *conditional* right to the legal fees for work that the firm

23  actually performs while the client allows the firm to continue handling that matter. To the extent

24  that a firm has any expectation of future business, that expectation disappears as soon as the client

25  exercises its right to remove the business, or the law firm ceases to be able to perform the work.

26       D.C. courts have long recognized that the attorney-client relationship requires that the

27  client have "highest trust and confidence" in the attorney, *Maxwell v. Gallagher*, 709 A.2d 100,

28  102 (D.C. 1998), and that clients therefore have an "unfettered right to discharge an attorney," *In*

Brief of Defendant-Appellant Jones Day

1   *re Robert W. Mance III*, 980 A.2d 1196, 1203 (D.C. 2009); *see also Neuman v. Akman*, 715 A.2d

2   127, 130-31 (D.C. 1998).  When a client exercises the absolute right to "discharge a lawyer at any

3   time, with or without cause," a discharged attorney also has no right to fees for work that he does

4   not perform.  *See* D.C. R. Prof'l Conduct 1.16(d) (requiring terminated attorney to refund any fee

5   "that has not been earned").  As the District of Columbia Court of Appeals has explained,

6   attorneys can "earn[] fees only by conferring a benefit on or performing a legal service for the

7   client."  *Mance*, 980 A.2d at 1202.  "[A] lawyer cannot earn a fee for doing nothing."  *Id.* at 1203

8   (internal quotation marks and citation omitted).

9       For these reasons, a terminated attorney is entitled only to payment for the value of past

10  work that he performed.  *See id.* at 1202-03; *King & King, Chartered v. Harbert Int'l, Inc.*, 436 F.

11  Supp. 2d 3, 14-16 (D.D.C. 2006).  He has no claim for lost profits against either the client or the

12  law firm that replaces him, nor does he have a right to profits that the new firm earns on the

13  matter.  Indeed, any contrary rule would interfere with client choice and would unfairly allow a

14  discharged attorney to recover a windfall for work that he did not perform.  *Cf.* D.C. R. Prof'l

15  Conduct 1.5(e) (permitting fee splitting among lawyers in different firms only where the division

16  "is in proportion to the services performed by each lawyer or each lawyer assumes joint

17  responsibility for the representation").

18      D.C. law thus protects clients' rights in several ways.  For example, "[a] fee arrangement

19  that substantially alter[s] and economically chill[s] the client's unbridled prerogative to walk

20  away from the lawyer strikes at the core of the fiduciary relationship," and is impermissible.

21  *Mance*, 980 A.2d at 1203-04 (sanctioning attorney for failure to return flat fee received from

22  client for which no services were performed following termination of lawyer) (second and third

23  alterations in original; internal quotation marks and citations omitted).  And D.C. Rule of

24  Professional Conduct 5.6(a) prohibits any partnership agreement "that restricts the rights of a

25  lawyer to practice after termination of the relationship, except an agreement concerning benefits

26  upon retirement."  The prohibition against such financial penalties protects "clients against having

27  only a restricted pool of attorneys from which to choose."  *Neuman*, 715 A.2d at 130-31 (internal

28  quotation marks and citations omitted); *see also* D.C. R. Prof'l Conduct 5.6 cmt. 1 (explaining

1  that restrictions on a lawyer's right to practice are impermissible because they limit "the freedom

2  of clients to choose a lawyer").

3      These principles establish that law firms do not own client matters; rather, they have an

4  interest only in fees for work clients allow them to perform.  Howrey's expectation of future

5  profits "disappear[ed]" when clients exercised their unfettered right to fire Howrey and retain

6  Jones Day.  *Heller*, 2014 WL 2609743 at *5-6; *see* ER 96 (FAC); *see also* Part VI.B.3, *infra*.

7  From that point on, any profits resulted from Jones Day's work, not Howrey's, and Howrey had

8  no property interest in them.

9                    **2.      Partnership Law Does Not Give Howrey Any Property Interest In
                          Client Matters Or Profits Earned For Work That It Did Not Perform**

10

11      Howrey relies on the fiduciary duty among partners of a dissolving firm to "account" to

12  one another for profits earned on "partnership business" as the firm "wind[s] up."  D.C. Code

13  § 33-104.04(b)(1); *see also* § 33-106.03(b)(3) (discussing application of § 33-104.04(b)(1) to

14  dissociating partners).  But the Revised Uniform Partnership Act ("RUPA") imposes a fiduciary

15  duty to account to a dissolved firm only on *former partners*, not on third parties like Jones Day,

16  and even then only for profits from the *dissolved partnership's business*.  RUPA does not give a

17  dissolved partnership a property interest in profits generated by third parties from handling

18  matters that are no longer business of the dissolved partnership.  Here, the matters at issue ceased

19  to be Howrey's partnership business when clients fired Howrey and retained Jones Day.  Thus,

20  Howrey had no right to profits from the matters at issue.

21      **a.**      RUPA, as codified in D.C. law, creates "a series of 'default rules' that govern the

22  relations *among partners* in situations they have not addressed in a partnership agreement."

23  RUPA (1997), prefatory note (emphasis added).  Nothing in RUPA binds, or imposes fiduciary

24  duties upon, third parties who are not members of the partnership.  Thus, when courts have

25  required an accounting for profits derived from partnership business, they have imposed the duty

26  on a *partner*, not a third-party law firm, because of the *partner's* fiduciary duties to the

27  partnership.  *See, e.g.*, *Jewel*, 156 Cal. App. 3d at 178-79; *Beckman*, 579 A.2d at 636; *Young*, 647

28  A.2d at 792; *Robinson*, 11 F. Supp. 2d at 5-6.  Indeed, no published appellate decision applying

Brief of Defendant-Appellant Jones Day

the so-called "unfinished business" doctrine grants a discharged firm a right to profits from the work performed post-dissolution by a third party firm, rather than by a subset of the original partners.[5]

Even with respect to former partners, the duty to account applies only to the dissolved firm's "partnership business."  Law firm partners, however, can only "wind up" client matters upon dissolution if a client allows them to do so.  *See* Part VI.A.1, *supra*.  If a client decides to terminate its relationship with the dissolved partnership, there is no more work for the dissolved partnership to do:  The matter is automatically wound up.  *See Heller*, 2014 WL 2609743, at *6.

**b.** The Trustee relies on *Beckman*, *Robinson*, and *Young*, but none of those cases supports his position that Howrey is entitled to profits Jones Day earned on matters that clients retained Jones Day to handle after firing Howrey.  Indeed, those cases confirm that a duty to account applies, at most, to individual partners who earn post-dissolution profits while performing work on behalf of their former partnership under an existing retainer agreement with the dissolving firm.

In *Beckman*, a departing partner chose to compel liquidation of his three-partner law firm.  The D.C. Court of Appeals held that he was entitled to an accounting by his former co-partners, who continued to work on a contingent fee matter on the *same* terms and under the *same* contract as before the dissolution of the firm.  The court explained that the defendants were required to account to their partner because "dissolution does not terminate or discharge *pre-existing contracts between the partnership and its clients*, and ex-partners who perform *under such*

---

[5] *See, e.g., Rothman v. Dolin*, 20 Cal. App. 4th 755 (1993) (two shareholders in a two-shareholder professional corporation agreed to split up and divide the firm's cases; the only persons who shared in profits from the new substituted engagements with the clients were the former shareholders); *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200 (1983) (two partners in a 17-partner law partnership left with the firm's biggest contingency case; the only persons who shared in profits from the substituted engagement with the client were the two former partners); *Dwyer v. Nicholson*, 89 A.D.2d 597 (N.Y. App. Div. 1982) (multiple partners failed to share post-dissolution profits with estate of deceased partner); *Geist v. Burnstine*, 19 N.Y.S.2d 76 (1940) (two-person partnership dissolved, each partner was entitled to share in post-dissolution profits made by the other).  *But see Labrum & Doak v. Ashdale*, 227 B.R. 391 (Bankr. E.D. Pa. 1998) (imposing a duty to account only on individual partners and only for the profits that they personally earned, not on the firm that they joined for its profits).

*contracts* do so as fiduciaries for the benefit of the dissolved partnership." *Beckman*, 579 A.2d at 636 (emphasis added); *see also Robinson*, 11 F. Supp. 2d at 6 (describing "[t]he crux of the *Beckman* opinion" as holding that "dissolution of a law partnership does not terminate existing contracts with its clients," and that "former partners who honor *these existing contracts* do so as fiduciaries for the benefit of the former partnership") (emphasis added). *Beckman* thus recognized an individual partner's duty to account for profits from "*partnership business*." *See Beckman*, 579 A.2d at 639 (emphasis added).

*Young* and *Robinson* followed *Beckman*. In both cases, a law firm dissolved, and a subset of the former firm—consisting entirely or partners from the dissolved firm—continued to represent the dissolved partnership's clients. *Young*, 647 A.2d at 787; *Robinson*, 11 F. Supp. 2d at 2. There is no indication in either case that any of the clients signed new retainer agreements with the "new" firm; rather, it appears that the former partners continued to perform legal services under the same retainer agreement that the client had signed with the dissolved firm. *See Young*, 647 A.2d at 787; *Robinson*, 11 F. Supp. 2d at 2.

Here, by contrast, the Trustee does not allege that Jones Day performed the work at issue pursuant to retainer agreements between clients and *Howrey*. Indeed, clients fired Howrey and signed new retainer agreements with Jones Day, a third party that never had any "fiduciary obligations" to Howrey. ER 132 (*Howrey II*). *Beckman*, *Young*, and *Robinson* thus do not support the Trustee's theory that Howrey is entitled to profits Jones Day earned, pursuant to new retainer agreements, for work that Jones Day performed using entirely its own resources.

**c.** The Trustee has previously argued that *Beckman* "adopts" decisions from other jurisdictions, including *Jewel*. *E.g.*, ECF 22 at 18 (Opp. to MTD). In *Jewel*, the court required individual partners to account to their former co-partners for profits they earned on matters previously handled by their former firm. Although the clients and attorneys executed substitution-of-attorney forms, nothing materially changed: The same attorneys worked on the matters, and they did so "under fee agreements entered into between the client and the *old* firm." *Jewel*, 156 Cal. App. 3d at 175 (emphasis added). Under those circumstances, the court treated the work as if it had been performed on behalf of the former firm. By relying on *Jewel*, the

- 11 -

1    Trustee essentially asks this Court to treat the work performed by Jones Day as if it were done on

2    Howrey's behalf.  There is no basis for such a fiction here.

3            As an initial matter, the Trustee's previous assertions that *Beckman* adopts every aspect of

4    the *Jewel* opinion are unfounded.  *Beckman* merely cited *Jewel* for the issue that was before it—

5    whether partners have a duty to account for profits from *partnership business*.  It did not cite

6    *Jewel* for its discussion regarding the impact of substitution-of-counsel forms, an issue not

7    presented in *Beckman*.  *See Beckman*, 579 A.2d at 636 (citing *Jewel* for the proposition that

8    partners have a duty to account for partnership business); *id.* at 640 (citing *Jewel* for the

9    proposition that, under UPA, a partner is not entitled to reasonable compensation for services

10   rendered in winding up partnership affairs).

11           In any event, *Jewel* does not support the Trustee's claims here.  In *Jewel*, a four-person

12   partnership split into separate two-partner firms.  156 Cal. App. 3d at 175.  "[E]ach former

13   partner sent a letter to each client whose case he had handled for the old firm, announcing the

14   dissolution [and enclosing] a substitution of attorney form."  *Id.*  The court held that, in doing so,

15   the former partners violated their "fiduciary duty not to take any action with respect to unfinished

16   partnership business for personal gain."  *Id.* at 178-79.  Indeed, the only apparent effect of the

17   partners' actions was to "cut off the rights of the other partners in the dissolved partnership":  The

18   *same* attorneys continued to handle each matter under the *same* fee arrangements.  *Id.* at 175, 178.

19   The court disregarded the new agreements and required partners to account for profits that the

20   court deemed in equity to have been earned on behalf of the dissolving partnership.  Thus, the

21   central premise of *Jewel* was that individual partners violated their fiduciary duties by soliciting

22   clients during the dissolved firm's wind-up period and appropriating for themselves work that

23   they could have performed on behalf of the dissolved firm.  *See Heller*, 2014 WL 2609743, at *4.

24   Other cases applying the so-called unfinished business doctrine involve similar facts.  *See* n.4,

25   *supra*.

26           Here, unlike in *Jewel*, clients did not retain individual former Howrey partners.  They

27   retained Jones Day, and thereby entered into substantively new representations with a third-party

28   firm that provided vast resources, personnel, capital, and services beyond those of Howrey.

- 12 -

1    Moreover, the former partners in *Jewel* arrogated to themselves an opportunity that an ongoing

2    successor to the former firm stood ready to handle with them. *Jewel*, 156 Cal. App. 3d at 178; *see*

3    *also Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 213 (1983). Howrey, by

4    contrast, lacked the ability to continue to provide legal services to its clients. *See* ER 95-108

5    (FAC) (detailing Howrey's "inevitable" "financial downfall," which ensured that "the firm would

6    not survive"). Thus, while the sole purpose of the "new" agreement in *Jewel* was to "cut off" the

7    other former partners' right to profits, *Jewel*, 156 Cal. App. 3d at 178, Howrey's former clients

8    had to retain third parties like Jones Day to obtain legal representation for their matters.

9          On these facts, there is no basis to treat Jones Day's work for its clients under new retainer

10   agreements as if it were Howrey's partnership business. When a former client terminates a

11   dissolved partnership and enters a new contract, with a new firm that has new partners, new

12   associates, new resources, and new expertise, there is no more partnership business for the

13   dissolved partnership to handle; the matter is wound up.

14          **d.**      As if these distinctions were not enough, *Jewel*, *Beckman*, *Robinson*, and *Young*

15   are also legally inapposite. Each of those cases was decided under UPA, but the Trustee's claims

16   here are governed by RUPA. RUPA changed the law in two key respects, both of which

17   undermine the *Jewel* line of cases. Indeed, no D.C. cases decided under RUPA involving either

18   pre- or post-dissolution departures follow *Jewel*, *Beckman*, *Robinson*, or *Young* for their holdings

19   regarding so-called unfinished business.

20          *First*, RUPA abrogated the fiduciary duty on which *Jewel* was based. In *Jewel*, the court

21   held that former partners had a fiduciary duty under UPA "not to take any action with respect to

22   unfinished partnership business for personal gain." *Jewel*, 156 Cal. App. 3d at 178-79. RUPA

23   § 404, which sets forth a "comprehensive and exclusive" list of partners' fiduciary duties, makes

24   clear that the duty at issue in *Jewel* no longer applies. RUPA § 404 cmt.1. Specifically,

25   § 404(b)(3) provides that a partner must "refrain from competing with the partnership in the

26   conduct of the partnership business *before the dissolution of the partnership*." D.C. Code § 33-

27   104.04(b)(3) (emphasis added). As the drafters of RUPA explained, this provision means that

28   "[t]he duty not to compete … does not extend to winding up the business, as do the other loyalty

Brief of Defendant-Appellant Jones Day

rules." RUPA § 404 cmt. 2. Thus, the commentary does not limit the freedom to compete to "new" business, even though it does impose such limits on the other loyalty rules. *See id.* Accordingly, "a partner is free to compete immediately upon an event of dissolution." *Id.*

For these reasons, even if an *individual* Howrey partner were to solicit a former Howrey client for a matter that Howrey had been handling, RUPA provides that this would not, as *Jewel* stated, violate the "fiduciary duty not to take any action with respect to unfinished partnership business for personal gain." *Jewel*, 156 Cal. App. 3d at 178-79. Under RUPA, the dissolved firm would have no right to demand an accounting for profits earned by its former partner under a new retainer agreement with the client. The new agreement *would* "transform[] the old firm's unfinished business into new firm business" and eliminate any duty to account. *Id.* at 176. Of course, it follows *a fortiori* that *Jewel* does not apply where Jones Day—a third party with no "fiduciary obligations" to Howrey—agreed to represent clients. *See* ER 132 (*Howrey II*).

*Second*, RUPA's "reasonable compensation" provision also abrogates *Jewel*'s legal framework. RUPA amended UPA so that any partner who provides services in "winding up" the partnership business is entitled to "reasonable compensation." D.C. Code § 33-104.01(h). UPA, by contrast, allowed reasonable compensation only to *surviving* partners. UPA § 18(f) (1914).

UPA's no-compensation provision was central to *Jewel*'s holding that former partners were entitled to fees "according to their respective [partnership] interests," rather than on a quantum meruit basis. *Jewel*, 156 Cal. App. 3d at 176 (trial court's quantum meruit analysis was based on assumption that "the rule precluding extra compensation…should not apply to a law partnership"). Indeed, but for UPA's no-compensation provision, the amount of work that a former partner *actually* did on the matters at issue—*not* his partnership interest—would determine his compensation. *See id.* By eliminating UPA's no-compensation provision, RUPA thus makes clear that a dissolved firm only has an interest in fees for work it actually performs.

### 3.   *Heller* And *Thelen* Confirm That Howrey Has No Property Interest In The Matters At Issue Or Profits Earned By Jones Day

Recent decisions from both this district and the New York Court of Appeals in *Heller* and *Thelen* embrace these arguments and confirm that defunct law firms have no property interest in

1   the profits earned by third-party firms that represent the clients that terminated the defunct firms.

2   *See Heller*, 2014 WL 2609743; *Thelen*, 24 N.Y.3d 16.  Importantly, these decisions are the only

3   published appellate decisions involving claims similar to the ones at issue here.  Judge Breyer and

4   New York's highest court emphatically rejected such claims, and the principles on which they

5   relied apply universally across jurisdictions, including D.C.

6        *First*, *Heller* and *Thelen* explained that, as a matter of law, "[a] law firm never owns its

7   client matters."  *Heller*, 2014 WL 2609743, at *5; *see Thelen*, 24 N.Y.3d at 22, 28.  Because

8   clients have the "unqualified right to terminate the attorney-client relationship at any time without

9   any obligation other than to compensate the attorney for the fair and reasonable value of the

10  *completed services*," both courts held that "no law firm has a property interest in future hourly

11  legal fees."  *Thelen*, 24 N.Y.3d at 28; *see Heller*, 2014 WL 2609743, at *1.  Thus, "the most [a]

12  law firm can be said to have is" a right to be paid for services that it actually performs, and "an

13  *expectation* of future business."  *Heller*, 2014 WL 2609743, at *5.  That *expectation* "disappear[s]

14  as soon as either (1) the client removes the business, which it can do at will, or (2) the law firm

15  ceases to be able to perform the work [necessary] to generate [any] expected future profits."  *Id.*

16  at *6.

17       *Second*, both courts concluded that *Jewel* and similar cases involving the so-called

18  "unfinished business" doctrine are inapposite where, as here, clients retained third-party firms to

19  handle their matters.  As Judge Breyer explained, the "essence" of *Jewel* was that "the departing

20  partners had appropriated work for themselves that could have been performed on behalf of the

21  dissolved firm."  *Heller*, 2014 WL 2609743, at *4.  He concluded that there is no basis for

22  extending *Jewel* to work performed under bona fide "new retainer agreements" between clients

23  and "new firms."  *Id.*  Judge Breyer further observed that RUPA "undermines the legal

24  foundation on which *Jewel* rests"; "[c]onsequently, there is no provision of the RUPA that gives

25  the dissolved firm the right to demand an accounting for profits earned by its former partner

26  under a new retainer agreement with a client," much less under a new retainer agreement between

27  a client and a third-party firm.  *Id.*

28

Brief of Defendant-Appellant Jones Day

1    The New York Court of Appeals likewise held that cases applying the so-called

2    unfinished business doctrine provided no support for the trustees' claims against third-party law

3    firms. *Thelen*, 24 N.Y.3d at 30-31.  Indeed, *Thelen* recognized that the *Jewel* line of cases

4    "involved claims for breach of fiduciary duty" and do not "define[] what makes up the

5    partnership property" that is subject to the state-law duty to account.  *Id.* at 27, 28, 30-31.

6    Because "client matters are not partnership property" of a law firm, the duty to account simply

7    does not apply to profits earned by third-party firms on matters that Thelen and Coudert

8    abandoned.  *Id.* at 28.

9    *Finally*, both courts concluded that any other rule would create an "unjust windfall" for

10   dissolving firms and would contravene important public policies, including a client's right to

11   choose counsel.  *Thelen*, 24 N.Y.3d at 31-32; *see Heller*, 2014 WL 2609743, at *5-7.  "Law firms

12   accepting a new client, even for an hourly-fee matter, must be prepared to invest considerable

13   resources: attorney salaries; malpractice insurance; administrative support; research fees;

14   document preparation; space allocation; opportunity costs; and so on."  *Heller*, 2014 WL 2609743,

15   at *7.  In light of these substantial investments, "[n]o firm can be expected to contribute those

16   resources if they are not entitled to retain the corresponding profits."  *Id.*  "The notion that law

17   firms will [take on] departing partners or accept client engagements without the promise of

18   compensation ignores commonsense and marketplace realities."  *Thelen*, 24 N.Y.3d at 32.  A

19   "rule that prevents third-party firms from earning a profit off of labor and capital investment they

20   make in a matter previously handled by a dissolved firm" would "discourage third-party firms"

21   from accepting such matters and taking on former partners of a dissolved firm in the first place.

22   *Heller*, 2014 WL 2609743, at *7.  That "is not in the public interest."  *Id.*

23   *Heller* and *Thelen* apply with equal force here.  The questions in this case do not hinge on

24   the particularities of different states' laws.  Rather, as Judge Breyer and the New York Court of

25   Appeals recognized, they implicate core principles such as ownership of client matters, the

26   attorney-client relationship, attorney mobility, and clients' right to choose counsel.  *See Heller*,

27   2014 WL 2609743, at *7; *Thelen*, 24 N.Y.3d at 28, 31-33.  These bedrock principles are

28   universally recognized across jurisdictions, including in D.C.  *See* Part VI.A.1, *supra*.  Just as a

Brief of Defendant-Appellant Jones Day

law firm like Howrey has no property interest in client matters or in profits generated by a third-party firm under California or New York law, it likewise has no such interest under D.C. law.

**B.     THE BANKRUPTCY COURT'S CONTRARY CONCLUSION IS WRONG**

The Bankruptcy Court described Howrey's "unfinished business"—which it defined as "matters in progress but not completed when the firm is dissolved"—as property of Howrey.  ER 54 (*Howrey I*); *see id.* at 72, 78-79.  According to the Bankruptcy Court, the client matters remained Howrey's "property" until relinquished, either before Howrey's dissolution (when clients fired Howrey and retained Jones Day) or after (when Howrey partners executed the *Jewel* waiver).  *Id.* at 54, 72, 78-79; ER 129-30, 136 (*Howrey II*).  But the Bankruptcy Court's premise is fundamentally flawed for all the reasons discussed above.  Furthermore, the decisions on which it relied have been overruled or repudiated.  And none of the reasons that it provided supports the court's unyielding adherence to its previous analysis.

**1.     The Bankruptcy Court's Analytical Framework Is Based On Decisions That Have Been Overruled Or Repudiated**

In denying Jones Day's motion to dismiss the FAC, the Bankruptcy Court relied on its previous analysis regarding Jones Day's motion to dismiss the Original Complaint, in which it held that Howrey has a property interest in client matters and the profits earned on them by Jones Day.  ER 130 (*Howrey II*) (adhering to previous decision in *Howrey I*).  The court's analysis in *Howrey I*, in turn, was based almost entirely on its own earlier decisions in the Heller and Brobeck bankruptcies, and on the Southern District of New York's decision in *Coudert*.  *See generally* ER 53-79 (citing *In re Heller Ehrman LLP*, 2013 WL 951706 (N.D. Cal. Bankr. Mar. 11, 2013) (Montali, J.); *Brobeck*, 408 B.R. 318 (Montali, J.); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Bros.)*, 480 B.R. 145 (S.D.N.Y. 2012)).  Indeed, almost every page of the Bankruptcy Court's opinion cites at least one of those cases.  *Id.* at 53, 56-58, 62-68, 70-79.

Those decisions have been repudiated.  In overruling the Bankruptcy Court's decision in *Heller*, Judge Breyer rejected the identical reasoning that the Bankruptcy Court applied in *Brobeck*.  *See Heller*, 2014 WL 2609743 (overruling Bankruptcy Court decision); *see Heller*,

Brief of Defendant-Appellant Jones Day

1   2013 WL 951706, at *4-6 (applying *Brobeck* to hold that Heller had property interest in client

2   matters and profits earned on them by third-party). The New York Court of Appeals' decision in

3   *Thelen* likewise rejected the *Coudert* district court's analysis, 24 N.Y.3d 16. Each of these

4   decisions dismantles the analytical framework supporting the Bankruptcy Court's conclusion that

5   Howrey has a property interest in client matters and the profits earned by Jones Day.

6                    **2.**      **None of the Bankruptcy Court's Explanations Supports Its View That**
                                 **Howrey Has A Property Interest In Client Matters Or Profits Earned**
7                                **By Jones Day**

8           Without acknowledging the numerous legal and factual distinctions that Judge Breyer and

9   the New York Court of Appeals deemed significant, the Bankruptcy Court provided a single-

10  sentence explanation for adhering to its previous decision:

11              Here, … the law of the District of Columbia governs, and the District of
                Columbia courts have applied the unfinished business rule to hourly and
12              contingency fee cases, have rejected the position that 'new retainer
                agreements' executed by former clients preclude enforcement of the
13              unfinished business rule, and have overruled policy objections similar to
                those underlying the Heller [district court] decision.
14

15  ER 129-30 (*Howrey II*). This sentence provides no support for the Bankruptcy Court's view that

16  D.C. law differs from that of California and New York.

17          *First*, for the reasons explained above, decisions from D.C. courts applying the so-called

18  unfinished business doctrine do not apply here. All of those cases involved suits among *former*

19  *partners* for profits that *those partners* earned on matters they were handling *on behalf of the*

20  *dissolved firm*. It is thus irrelevant that one federal court in D.C. has applied the so-called

21  unfinished business doctrine to hourly-fee cases. *No* D.C. court has ever applied that doctrine to

22  recognize a dissolving law firm's property interest in fees earned by a third-party firm under new

23  retainer agreements regarding matters that clients hired the third-party firm to handle after

24  terminating the dissolving firm. For this reason, the Bankruptcy Court's reliance on dicta in

25  *Beckman* referring to "*all work* performed on partnership business unfinished at the date of

26  dissolution" is also misplaced. *See* ER 59 (*Howrey I*) (quoting *Beckman*, 579 A.2d at 639).

27  When clients exercised their unfettered right to fire Howrey and retain Jones Day, the matters at

28  issue ceased to be Howrey's "partnership business."

*Second*, as explained above, none of the D.C. cases on which the Bankruptcy Court relied said anything at all about "new retention agreements."  *See* Part VI.A.2, *supra* (discussing *Beckman*, *Young*, and *Robinson*).  The Bankruptcy Court's statement that these cases "reject[] the position that 'new retention agreements' executed by former clients preclude enforcement of the unfinished business rule" is simply unfounded.  ER 129 (*Howrey II*).  And although the Trustee has previously argued that *Beckman* adopted discussions in *Jewel* and other cases regarding new retainer agreements (Opp. to MTD FAC, ECF No. 38 at 7-8), *Beckman*'s passing citation to those cases for a distinct proposition is hardly a wholesale endorsement of those courts' reasoning on other issues.  Indeed, contrary to the Trustee's representation to the Bankruptcy Court, *Beckman* did not cite any of those cases for their treatment of new retainer agreements.  *Compare id.* (collecting cases cited by *Beckman* and including parentheticals and pincites not included in *Beckman*), *with Beckman*, 579 A.2d at 636.

*Finally*, D.C. courts have never grappled with, much less rejected, policy objections recognized by *Heller* and *Thelen* concerning client choice and attorney mobility.  In *Howrey I*, the Bankruptcy Court relied on *Beckman*'s statement that "[t]he duty to wind up partnership business does not disable the former partners in a law firm from accepting employment from former clients of the dissolved partnership" on new matters.  ER 60 (quoting *Beckman*, 579 A.2d at 638).  But this statement has nothing at all to do with the adverse policy impact of the Trustee's proposed rule in this case.  This passage of *Beckman* merely described the scope of the so-called unfinished doctrine when it applies—without opining on its policy consequences, or whether it would apply on facts like those of this case.

*Robinson* likewise fails to address salient policy concerns.  The court noted that partners "are free (indeed encouraged)" to resolve unfinished business disputes through partnership agreements, 11 F. Supp. 2d at 6, but viewing client matters as law firm property is a "deficiency" that cannot be "cure[d]" by the freedom to contract around default rules, *Thelen*, 24 N.Y.3d at 33.  Similarly, the inapplicability of the unfinished business doctrine to "*new* matters brought into the firm after the date of dissolution," says nothing about the implications for a client's choice of counsel on *pending* matters.  *Robinson*, 11 F. Supp. 2d at 6.  Indeed, "the Trustee's position

Brief of Defendant-Appellant Jones Day

1   would all but force former [Howrey] clients"—left in the lurch by a law firm that could no longer

2   serve them—"to retain new counsel with no connection to [Howrey] or their [pending] matters."

3   *Heller*, 2014 WL 2609743, at *7 n.10.  Finally, the *Robinson* court's statement that its holding

4   was fair because it applied to all "former partners" provides no justification for extending that

5   holding to *third parties* who have no duties to the dissolved firm.  *Robinson*, 11 F. Supp. 2d at 6;

6   *see* ER 132 (*Howrey II*).  As discussed above, a "rule that prevents third-party firms from earning

7   a profit off of labor and capital investment they make in a matter previously handled by a

8   dissolved firm" would produce "untoward unintended consequences" for clients, lawyers, and law

9   firms.  *Thelen*, 24 N.Y.3d at 31-33; *Heller*, 2014 WL 2609743, at *7; *see* Part VI.A.1, *supra*.

### 3. The Bankruptcy Court's Unprecedented Conclusion Regarding Pre-Dissolution Matters is Unsupportable

The Bankruptcy Court's holding that Howrey has a property interest in profits earned by Jones Day on pre-dissolution matters is unsupportable, both as a matter of law and public policy.

The Bankruptcy Court's application of the so-called unfinished business doctrine to pre-dissolution matters is unprecedented.  No D.C. cases involving law firm dissolutions have applied the doctrine to *pre-dissolution* matters, nor have any published decisions from any other jurisdiction.[6]  Indeed, the D.C. Court of Appeals has rejected the notion that the duty to account extends to partners who—like the pre-dissolution partners here—withdraw without compelling liquidation of the partnership.  As the Court explained in *Beckman*, where a partner dissociates and "permits continuation of the business by other partner(s)," rather than "compel[ling] liquidation" of the partnership, "the outgoing partner severs the fiduciary association that binds

---

[6] The Trustee has previously relied on the Eleventh Circuit's unpublished, nonprecedential, *per curiam* decision in *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 662 (11th Cir. 2013), for the proposition that "dissociated partners must account to the partnership for any fees from ongoing client transactions that are received after dissociation." *E.g.*, ECF 22 at 40 (Opp. to MTD) (quoting *Buckley Towers*).  But in that case (which involved a contingent fee award), some portion of the award collected by a successor law firm *was* attributable to the partnership business of a prior firm that had not been paid for its work on the matter.  Here, the Trustee has never contended that Jones Day has been paid fees for hourly work that *Howrey* performed; rather, the only profits at issue were earned by Jones Day for Jones Day's work.

1   him to the post-dissolution entity." 579 A.2d at 634. In that situation, no duty to account applies.

2   *Id.*

3       In addition, the Bankruptcy Court's reasons for extending the doctrine to pre-dissolution

4   matters are unsupportable. It concluded that doing so was merely a logical extension of *Jewel*

5   and its (subsequently reversed) decision in *Heller*, stating that "there is no reason to limit the

6   definition of Howrey Unfinished Business to matters pending as of dissolution." ER 72 (*Howrey*

7   *I*). But viewing client matters as property of a law firm at any time, pre- or post-dissolution,

8   "simply does not comport with [the legal] profession's traditions and the commercial realities of

9   the practice of law today." *Thelen*, 24 N.Y.3d at 33. And because *Jewel* does not apply here,

10  there is no basis for extending its reasoning to pre-dissolution claims. *See Heller*, 2014 WL

11  2609743, at *4-5; Part VI.A.2, *supra*.

12      Likewise, because a former partner is free to compete with the partnership immediately

13  upon dissolution *or dissociation, see* D.C. Code § 33-106.03(b)(3), "there is no provision of the

14  RUPA that gives the [partner's former] firm the right to demand an accounting for profits earned

15  by its former partner under a new retainer agreement with a client"—much less under a new

16  retainer agreement between a client and a third-party firm. *Heller*, 2014 WL 2609743, at *4. The

17  Bankruptcy Court's reliance on a dissociating partner's duty to account under D.C. Code § 33-

18  106.03(b)(3) was therefore misplaced. *See* ER 78 (*Howrey I*). Indeed, while a dissociated partner

19  must still account for profits that he earns from his former firm's "partnership business," D.C.

20  Code § 33-104.04(b)(1), the matters at issue ceased to be Howrey's "partnership business" when

21  clients exercised their unfettered right to terminate Howrey and retain Jones Day. *See Heller*,

22  2014 WL 2609743, at *6; *Thelen*, 24 N.Y.3d at 22.

23      Finally, the Bankruptcy Court's extension of the duty to account to pre-dissolution matters

24  exacerbates all of the policy concerns discussed above. Its expansive application of the so-called

25  unfinished business doctrine would create a sea change in the law governing the legal profession.

26  Under the Bankruptcy Court's holding, any partner who changes law firms (under any

27  circumstances) and his new law firm would have a duty to account to the former firm for any

28  profits earned by the new firm on matters for which clients terminated the old firm and retained

Brief of Defendant-Appellant Jones Day

the new firm.  On this logic, if a lawyer were to switch firms multiple times during the pendency of a particular matter, with the client deciding to engage each of the lawyer's new firms in succession, the first firm that represented the client on that matter would be entitled to the profits generated at each successor firm.

This rule, which would severely impede the ability of lawyers to move from one firm to another (including lateral moves between two financially stable firms), has enormous negative implications for law firms and the clients that they serve.  By forcing law firms to work for free on any matter previously handled by another firm, the Bankruptcy Court's holding would discourage firms from taking on such matters in the first place, impairing clients' access to the counsel of their choice.  It would also launch countless lawsuits over professional moves that have always been considered ordinary and routine.  Extending the so-called unfinished business doctrine to pre-dissolution matters would seriously undermine D.C.'s public policies favoring client choice and attorney mobility.  *See* Part VI.A.1, *supra*.

## C.   THE TRUSTEE'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS

If this Court determines that Howrey has no property interest in the matters at issue or Jones Day's profits, then it should enter judgment for Jones Day.  But even if Howrey had a property interest in fees earned by Jones Day on matters that clients retained Jones Day to handle after firing Howrey, the Trustee's claims would fail as a matter of law for independent reasons.

### 1.   The Trustee's Fraudulent Transfer Claims Fail Because Howrey Is Entitled, At Most, To Post-Dissolution Profits From The Use Of Its Capital, And No Such Profits Exist

The Trustee's fraudulent transfer claims fail for the additional reason that, even if Howrey had some conceivable property interest in profits earned by a third-party firm, its interest would be limited to profits earned from the use of Howrey's capital.  Because no such profits exist, Jones Day is entitled to judgment as a matter of law.

RUPA makes clear that a dissolving firm has, at most, a property interest in post-dissolution profits earned by the use of its capital.  When the D.C. Council adopted RUPA and extended the right to "reasonable compensation" to all partners, the term had a settled meaning

Brief of Defendant-Appellant Jones Day

1   under UPA case law, of which the Council is presumed to have been aware.  *See Office of*

2   *Peoples' Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1091 (D.C. 1984) (explaining that a

3   legislature is presumed to enact laws with knowledge of relevant decisional law).

4       In particular, D.C. law recognized that when a partner winds up a partnership's affairs, the

5   justification for requiring that partner to remit profits back to the partnership is "the continued use

6   by the partner of his coadventurer's property."  *Hudson v. Kemper*, 153 A.2d 316, 318 (D.C. 1959)

7   (citing 55 A.L.R.2d 1391, 1414 (1957)).  Under this "generally accepted rule," "one claiming an

8   interest in profits earned subsequently to the dissolution of a partnership is entitled to such share

9   of the profits as his interest in the firm's capital bears to the total capital, or, in other words, such

10  share of the profits as can rightly be attributed to the continued use of his property or capital in

11  the business."  55 A.L.R.2d 1391 § 32 (2011).  Conversely, when post-dissolution profits were

12  primarily due to the surviving partners' skill and services, rather than to the dissolved firm's

13  capital, no profits could be recovered by the other partners.  *See Weisbrod v. Ely*, 767 P.2d 171,

14  175 (Wyo. 1989) (refusing to award the outgoing partner any post-dissolution profits where the

15  only physical assets consisted of office furniture and a truck and the partnership profits were

16  attributable to the remaining partner's labor); *Blut v. Katz*, 99 A.2d 785, 788 (N.J. 1953) (refusing

17  to remit any post-dissolution profits to deceased partner's estate "where the main success of the

18  firm is due to the skill, time and diligence of the remaining partners"); *Jacobson v. Wikholm*, 29

19  Cal. 2d 24, 30-31 (1946) (holding that the profits owed the dissolving partnership—i.e., profits

20  minus "reasonable compensation"—were those profits from completing the partnership's

21  business that were attributable to partnership capital).

22      The Trustee does not allege that Jones Day used any of Howrey's capital (including

23  equipment, facilities, or other resources) in generating the profits at issue.  To the contrary, after

24  the clients retained Jones Day, Howrey compensated no one for handling Jones Day's matters,

25  bore none of the risk or expense associated with them, and contributed nothing at all to the

26  matters at issue.  Moreover, the inability ethically to sell or assign any aspect of a client

27  relationship makes characterizing any of Howrey's client contracts as "capital" especially

28  inappropriate in the law firm context.  In sum, because all of the profits at issue are "attributable

- 23 -

Brief of Defendant-Appellant Jones Day

to the services and skill of [Jones Day]," and none are attributable to Howrey's capital, the Trustee's fraudulent transfer claims fail as a matter of law.  In the absence of any such profits, no property belonging to Howrey was fraudulently transferred to Jones Day.

### 2.    The Trustee's Fraudulent Transfer Claims Also Fail Because Jones Day Was Not The Transferee Of Howrey's Property

The Trustee's fraudulent transfer claims also fail for the independent reason that he cannot trace any form of consistently identified property from Howrey or its partners to Jones Day.

The Trustee's transfer theory fails however the alleged property interest is defined.  If the property interest is defined as a direct right to future profits from client matters, the Trustee's claim fails because neither Howrey nor its partners transferred that right to Jones Day.  Instead, any direct right to profits came from *clients* when they authorized Jones Day to work on their matters and paid the fees at issue directly to Jones Day.  Only clients can convey the "right" to perform the client's legal work.  *See* Part VI.A.1, *supra*.

The Trustee's claims fare no better if the property interest is defined as a legal benefit— i.e., the release of any duty to account for profits derived from work on matters that remained Howrey's "partnership business."  Although the *Jewel* waiver transferred this benefit from Howrey to its partners, the partners never transferred the benefit to Jones Day.  "The crux of the definition [of a transfer] is that the transferor no longer has the same rights that the transferor had prior to the transfer."  *In re Feiler*, 218 B.R. 957, 961 (Bankr. N.D. Cal. 1998).  The Howrey partners' rights, however, remained exactly the same both before and after the alleged "transfer" to Jones Day:  At both points in time, the partners did not have to account to Howrey for profits they earned on Howrey's partnership business.  Thus, there was no transfer of any legal benefit to Jones Day.  *See id.*

### 3.    The Trustee's Unjust Enrichment Claim Is Not Cognizable Under D.C. Law

Finally, the FAC fails to state a claim for unjust enrichment.  Under D.C. law, "[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).

Brief of Defendant-Appellant Jones Day

1    As an initial matter, there is nothing unjust about Jones Day keeping the "the fruits of its

2  own labors or legitimate efforts"; "[t]o the contrary, it is not equitable to force [a defendant] to

3  hand over its sweat equity."  *Mattel, Inc. v. MGA Entm't, Inc.*, No. 04-9049, 2011 WL 836418, at

4  *2 (C.D. Cal. Mar. 4, 2011) (alterations in original, citations, internal quotation marks omitted);

5  *see also Associated Banc-Corp. v. John Harland Co.*, No. 06-C-1097, 2007 WL 128337, at *2-3

6  (E.D. Wis. Jan. 11, 2007) ("Unjust enrichment involves getting something for nothing, not

7  providing a product for a price.").  Indeed, successful unjust enrichment claims typically involve

8  defendants who retain the benefit of *someone else's* efforts.  *See, e.g.*, *Peart v. D.C. Hous. Auth.*,

9  972 A.2d 810, 813-17 (D.C. 2009); *News World Commc'ns, Inc.*, 878 A.2d at 1222.

10   The Trustee's claim is also legally deficient because it is premised on a theory that D.C.

11  courts have rejected.  D.C. law requires that the *plaintiff*—not a third party—confer a benefit on

12  the defendant.  *See, e.g.*, *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122-23

13  (D.D.C. 2007); *Int'l Bhd. of Teamsters v. Ass'n of Flight Attendants*, 663 F. Supp. 847, 854

14  (D.D.C. 1987); *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527,

15  at *21 (D.D.C. Sept. 21, 2006).  The Trustee acknowledges that any purported benefit was

16  conferred on Jones Day indirectly by third parties rather than by Howrey itself.  Although D.C.

17  courts have routinely rejected unjust enrichment claims based on benefits conferred by third

18  parties, the Bankruptcy Court nevertheless speculated that D.C. might recognize such an

19  expansive theory.  *See* ER 134-36 (*Howrey II* ).  Whatever other states may or may not hold, D.C.

20  law is clear, and D.C. courts have squarely rejected the indirect benefit theory on which the

21  Trustee's claim is based.  *See, e.g.*, *Nevius*, 511 F. Supp. 2d at 122-23.

22  **VII.   CONCLUSION**

23   For these reasons, Howrey's First Amended Complaint should be dismissed with

24  prejudice.

25  Dated: January 13, 2015                                JONES DAY

26                                                              By:      /s/ Jason McDonell
                                                                      Jason McDonell

27                                                         Attorneys for Defendant

28                                                         JONES DAY

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I hereby certify that this 13th day of January 2015, I caused a true and correct copy of the

foregoing Brief in Support of De Novo Review to be filed electronically with the Clerk of the

4

Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by

5

operation of the Court's electronic filing system.

6

7                                                      /s/ Jason McDonell
                                                        Jason McDonell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28